THEODORE L. BAETENS AND JOYCE R. BAETENS,
PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 21748–80.    Filed January 26, 1984.

*Herbert M. August,* for the petitioners.
*Kevin W. Cobb* and *Peter M. Ritteman,* for the respondent.

## OPINION

PARKER, *Judge*: Respondent determined a deficiency in petitioners' 1977 Federal income tax in the amount of $7,239.16. The sole issue for decision is whether a 1977 distribution from a profit-sharing trust may be rolled over tax free into an individual retirement account pursuant to section 402(a)(5).[1]

This case was submitted fully stipulated and the stipulated facts are so found. The stipulation and the exhibits attached thereto are incorporated herein by this reference.

Petitioners Theodore L. and Joyce R. Baetens resided in Grosse Pointe Woods, Mich., at the time they filed their

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue, unless otherwise noted, and all references to Rules are to the Tax Court Rules of Practice and Procedure.

petition in this case. They timely filed a joint Federal income tax return for 1977 using the cash receipts and disbursements method of accounting. Joyce R. Baetens is a party to this case solely by virtue of having filed a joint return with her husband, Theodore L. Baetens (hereinafter petitioner).

Petitioner was an employee and shareholder of Stan's Trucking, Inc., a small business corporation. Effective April 1, 1966, Stan's Trucking, Inc., established a profit-sharing plan and related trust (hereinafter sometimes referred to collectively as the plan). On March 28, 1967, respondent issued a letter determining that the plan qualified under section 401(a), and the related trust was thus exempt from tax under section 501(a). Stan's Trucking, Inc., made contributions to the plan for petitioner's benefit from 1966 through the corporation's tax year ending March 31, 1973, but made no contributions to the plan after that date.

Petitioner's employer terminated the plan effective April 30, 1976. On May 31, 1977, the employer submitted to respondent an Application for Determination Upon Termination, Form 5310, requesting immediate approval of termination of the plan.

On July 1, 1977, petitioner received a distribution of $21,077 from the plan. The funds thus distributed were attributable solely to employer contributions and constituted the entire amount that was credited to petitioner's account.[2] On July 31, 1977, petitioner rolled over the entire amount of the plan's distribution ($21,077) into an Individual Retirement Account (IRA) at the First Federal Savings of Detroit.

On November 9, 1977, respondent issued a proposed adverse determination letter regarding the qualified status of the

---

[2]In view of this stipulation, we have treated the entire $21,077 distribution as employer contributions made on petitioner's behalf before Mar. 31, 1973. However, respondent's retroactive disqualification of the plan was based on his determination that interests of certain employees, which should have become nonforfeitable when the employer discontinued contributions, were in fact forfeited. The proposed adverse determination letter stated that the amounts forfeited by certain employees terminated in the employer's fiscal year ended Mar. 31, 1975, and subsequent years had been "*redistributed* to remaining participants." (Emphasis added.) We cannot determine whether the forfeitures were actually distributed to the remaining participants at that time, or reallocated among the remaining participants' separate accounts for subsequent distribution. Any forfeitures reallocated to petitioner's account after disqualification of the plan would not constitute employer contributions to an exempt trust. If any portion of petitioner's $21,077 distribution in fact represents reallocated forfeitures, the parties may be able to handle the matter under Rule 155, if that can be done without reopening the record.

plan.[3] On March 28, 1979, respondent issued a final adverse determination letter that retroactively disqualified the plan effective for tax years ending March 31, 1974, and thereafter.[4] The plan was a qualified plan under section 401(a) at the time all contributions for petitioner were made to the plan. The plan was not a qualified plan on July 1, 1977, when the $21,077 distribution was made to petitioner.

Petitioner did not report as income for 1977 any part of the $21,077 that was distributed to him in that year. Also during 1977, petitioner's IRA earned $759 in interest, and petitioner did not include this interest in income for that year. Respondent determined that the distribution from the profit-sharing plan did not qualify to be rolled over into an IRA under section 402(a)(5), but was includable in petitioner's income for 1977. Respondent also determined that petitioner's IRA was not qualified under section 408 and therefore the interest earned on that account in 1977 was not exempt from tax.

This case involves the tax treatment to be accorded to a distribution from a trust which was part of a formerly qualified employees' plan that was disqualified at the time the distribution was made to the employee. Here the employees'

---

[3]The Nov. 9, 1977, letter stated the reasons for the proposed adverse determination as follows:

"The corporation has not made a contribution to its profit sharing plan for its fiscal year ending March 31, 1974 and subsequent years.

"Internal Revenue Code section 401(a)(7) of the 1954 Code and Regulations thereunder (1.401–6) state that a trust shall not constitute a qualified trust under Internal Revenue Code section 401(a) unless the plan, of which such trust is a part, provides that upon its termination or upon complete discontinuance of contributions under the plan, the rights of all employees to benefits accrued to the date of such termination or discontinuance, to the extent then funded, or the amounts credited to the employees' accounts are nonforfeitable. The same requirements are still effective under the Employee Retirement Income Security Act (ERISA) as spelled out by Internal Revenue Code sections 401(a)(7) and 411(d)(3).

"From information supplied, it is clear that, although contributions were discontinued in the fiscal year ended March 31, 1974 causing amounts credited to the employees' accounts to be nonforfeitable, portions of amounts credited to employees' accounts were forfeited when these employees terminated in fiscal year ended March 31, 1975 and subsequent, and redistributed to remaining participants.

"Therefore, Code section 401(a)(7) was violated and the plan does not qualify under Internal Revenue Code section 401(a) and the trust is not exempt under Internal Revenue Code section 501(a) for fiscal year ending March 31, 1975 and subsequent years."

[4]The final adverse determination letter, dated Mar. 28, 1979, stated in pertinent part:

"This is a final adverse determination letter indicating that this plan does not meet the requirements of Section 401 of the Internal Revenue Code effective for the tax years ending March 31, 1974, and subsequent, for the following reasons:

"The failure of the plan to provide all employees with nonforfeitable rights to the amounts credited to their accounts upon termination or complete discontinuance of contributions violates the requirements of Section 401(a)(7) Internal Revenue Code of 1954."

plan was qualified under section 401(a), and the trust was exempt from tax under section 501(a) during the years the employer made the contributions to the trust, but the plan had become disqualified and the trust nonexempt by the time the distribution was made to petitioner. There is a split in the circuits as to whether we must look to the status of the employees' trust at the time of contribution or at the time of distribution, with the Second Circuit saying the time of contribution (*Greenwald v. Commissioner*, 366 F.2d 538 (2d Cir. 1966), affg. in part, revg. in part 44 T.C. 137 (1965)), and the Fifth Circuit saying the time of distribution (*Woodson v. Commissioner*, 651 F.2d 1094 (5th Cir. 1981), revg. 73 T.C. 779 (1980)). We must decide whether we will adhere to our position in *Woodson*, in which we followed the opinion of the Second Circuit in *Greenwald*, or whether we will overrule our *Woodson* opinion and follow the Fifth Circuit's reversal of our opinion in that case. For the reasons given below, we will continue to follow the position of the Second Circuit in *Greenwald* and our Court-reviewed opinion in the *Woodson* case.[5]

Beginning in 1966, the profit-sharing plan established by petitioner's employer was qualified under section 401(a), and its related trust was exempt from tax under section 501(a). The profit-sharing plan's qualified status (and therefore the trust's exemption from tax) was retroactively revoked effective as of March 31, 1974. Petitioner has not challenged the revocation of the plan's qualified status. However, all of the contributions to the plan for petitioner's benefit were made by his employer in years during which the plan was qualified and the trust exempt, i.e., from 1966 through the employer's tax year ending March 31, 1973.

In 1977, petitioner received a distribution of $21,077, representing his entire interest or balance in the trust. The specific legal issue in this case is whether that distribution, which

[5]We will adhere to our *Woodson* rationale except in cases appealable to the Fifth Circuit. See *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). The Eleventh Circuit has indicated that it considers as binding precedent all Fifth Circuit opinions handed down before Oct. 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981). Since the Fifth Circuit handed down *Woodson* on July 29, 1981, we assume that the Eleventh Circuit would follow it and that we in turn would also apply our *Golsen* rule to any case appealable to the Eleventh Circuit. Barring stipulation to the contrary, any appeal in the present case will lie to the Sixth Circuit. Sec. 7482(b).

petitioner received in a year when the plan was not qualified and the trust was not exempt under sections 401(a) and 501(a), can be rolled over tax free into an Individual Retirement Account (IRA) pursuant to section 402(a)(5).[6] That depends

---

[6]In 1978, sec. 402(a)(5) was amended by Pub. L. 95–458, 92 Stat. 1255, 1258, but was made retroactively effective with respect to taxable years beginning after Dec. 31, 1974. As thus amended, sec. 402(a)(5) reads as follows:

(5) ROLLOVER AMOUNTS.—

(A) GENERAL RULE.—If—

(i) the balance to the credit of an employee in a qualified trust is paid to him in a qualifying rollover distribution,

(ii) the employee transfers any portion of the property he receives in such distribution to an eligible retirement plan, and

(iii) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,

then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.

(B) MAXIMUM AMOUNT WHICH MAY BE ROLLED OVER.—In the case of any qualifying rollover distribution, the maximum amount transferred to which subparagraph (A) applies shall not exceed the fair market value of all the property the employee receives in the distribution, reduced by the employee contributions.

(C) TRANSFER MUST BE MADE WITHIN 60 DAYS OF RECEIPT.—Subparagraph (A) shall not apply to any transfer of a distribution made after the 60th day following the day on which the employee received the property distributed.

(D) DEFINITIONS.—For purposes of this paragraph—

(i) QUALIFYING ROLLOVER DISTRIBUTION.—The term "qualifying rollover distribution" means 1 or more distributions—

(I) within 1 taxable year of the employee on account of a termination of the plan of which the trust is a part or, in the case of a profit-sharing or stock bonus plan, a complete discontinuance of contributions under such plan, or

(II) which constitute a lump sum distribution within the meaning of subsection (e)(4)(A) (determined without reference to subparagraphs (B) and (H) of subsection (e)(4)).

(ii) EMPLOYEE CONTRIBUTIONS.—The term "employee contributions" means—

(I) the excess of the amounts considered contributed by the employee (determined by applying section 72(f)), over

(II) any amounts theretofore distributed to the employee which were not includible in gross income.

(iii) QUALIFIED TRUST.—The term "qualified trust" means an employees' trust described in section 401(a) which is exempt from tax under section 501(a).

(iv) ELIGIBLE RETIREMENT PLAN.—The term "eligible retirement plan" means—

(I) an individual retirement account described in section 408(a),

(II) an individual retirement annuity described in section 408(b) (other than an endowment contract),

(III) a retirement bond described in section 409,

(IV) a qualified trust, and

(V) an annuity plan described in section 403(a).

(E) SPECIAL RULES.—

(i) TRANSFER TREATED AS ROLLOVER CONTRIBUTION UNDER SECTION 408.—For purposes of this title, a transfer described in subparagraph (A) to an eligible retirement plan described in subclause (I), (II), or (III) of subparagraph (D)(iv) shall be treated as a roll-over contribution described in section 408 (d)(3).

(ii) SELF-EMPLOYED INDIVIDUALS AND OWNER-EMPLOYEES.—An eligible retirement plan described in subclause (IV) or (V) of subparagraph (D)(iv) shall not be treated as an eligible retirement plan for the transfer of a distribution if any part of the distribution is attributable to a trust forming part of a plan under which the employee was an employee within the meaning of section 401(c)(1) at the time contributions were made on his behalf under the plan.

upon satisfying a number of statutory requirements, namely, that the balance in a "qualified trust" be paid to the employee in a "qualifying rollover distribution" and that the employee timely transfer the funds into an "eligible retirement plan." Petitioner has clearly met the requirements of section 402(a)(5) in respect to making a timely transfer of the distribution into an eligible retirement plan. Sec. 402(a)(5)(A)(ii), (B), and (C). The question is whether or not the distribution was a "qualifying rollover distribution" from a "qualified trust." Sec. 402(a)(5)(A)(i), (D)(i), and (D)(iii).

Respondent asserts that the distribution does not qualify to be rolled over tax free into an IRA because it was made at a time when the trust was not exempt from tax under section 501(a) because its related plan was no longer qualified under section 401(a). Respondent has determined that the entire distribution is taxable as ordinary income to petitioner in 1977 under section 402(b).[7] Petitioner argues that since all contributions to the plan were made when the plan and trust were qualified and exempt under sections 401(a) and 501(a), the distribution attributable to those contributions can be rolled over into an IRA without immediate tax consequences.

Petitioner's argument rests upon four court opinions: *Greenwald v. Commissioner, supra; Woodson v. Commissioner*, 73 T.C. 779 (1980), revd. 651 F.2d 1094 (5th Cir. 1981); *Hesse v. United States*, an unreported case (E.D. Mo. 1980, 47 AFTR 2d 81-1024, 81-1 USTC par. 9153); and *Pitt v. United States*, an unreported case (M.D. Fla. 1975, 35 AFTR 2d 75-1492, 75-1 USTC par. 9472). Of these cases, only *Hesse v. United States, supra*, specifically involved a rollover into an IRA under section 402(a)(5). The other cases petitioner relies upon in-

---

[7] Sec. 402(b) provides:

(b) TAXABILITY OF BENEFICIARY OF NONEXEMPT TRUST.—Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt from tax under section 501(a) shall be included in the gross income of the employee in accordance with section 83 (relating to property transferred in connection with performance of services), except that the value of the employee's interest in the trust shall be substituted for the fair market value of the property for purposes of applying such section. The amount actually distributed or made available to any distributee by any such trust shall be taxable to him in the year in which so distributed or made available, under section 72 (relating to annuities), except that distributions of income of such trust before the annuity starting date (as defined in section 72(c)(4)) shall be included in the gross income of the employee without regard to section 72(e)(1) (relating to amount not received as annuities). A beneficiary of any such trust shall not be considered the owner of any portion of such trust under subpart E of part I of subchapter J (relating to grantors and others treated as substantial owners).

volved the eligibility of any portion of the distributions for favorable treatment under section 402(a)(2).

Both parties assume and we agree that sections 402(a)(2) and 402(a)(5) are analogous and contain identical statutory requirements in regard to the status of the trust. Section 402(a)(2) is prefaced by the language: "In the case of an employee trust described in section 401(a), which is exempt from tax under section 501(a)."[8] Section 402(a)(5), as it read before the 1978 amendments, contained this same preface; in the current version made retroactively applicable to the year before the Court, the required qualified trust is still defined as "an employees' trust described in section 401(a) which is exempt from tax under section 501(a)." Sec. 402(a)(5)(D)(iii); see note 6 *supra*. Thus, for purposes of determining whether the distribution to petitioner is immediately taxable or whether it may be rolled over tax free into an IRA, we believe that case law under section 402(a)(2) is applicable. Under both sections 402(a)(2) and 402(a)(5), respondent has taken the position that a distribution from a nonqualified, nonexempt plan and trust requires the distribution to be immediately taxed as ordinary income, even though the plan was qualified and the trust exempt when some (and here all) of the contributions were made.

The cases cited by petitioner, including our *Woodson* opinion, have all adopted the reasoning of the Second Circuit in *Greenwald v. Commissioner, supra.* In *Greenwald*, the Commissioner retroactively disqualified a profit-sharing plan and

---

[8]SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

(a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

\* \* \* \* \* \* \*

(2) CAPITAL GAINS TREATMENT FOR PORTION OF LUMP SUM DISTRIBUTION.—In the case of an employee trust described in section 401(a), which is exempt from tax under section 501(a), so much of the total taxable amount (as defined in subparagraph (D) of subsection (e)(4)) of a lump sum distribution as is equal to the product of such total taxable amount multiplied by a fraction—

    (A) the numerator of which is the number of calendar years of active participation by the employee in such plan before January 1, 1974, and

    (B) the denominator of which is the number of calendar years of active participation by the employee in such plan,

shall be treated as a gain from the sale or exchange of a capital asset held for more than 6 months [9 months for taxable years beginning in 1977; 1 year for taxable years beginning after December 31, 1977]. \* \* \*

This is the same version of sec. 402(a)(2) that was involved in our opinion in *Woodson v. Commissioner*, 73 T.C. 779, 781 n. 1.

determined that a subsequent distribution was not entitled to capital gains treatment under section 402(a)(2) but instead was taxable as ordinary income because the trust was not exempt *at the time of the distribution.*[9]

The Second Circuit reversed our implicit holding that section 402(a)(2) required that plan to be qualified at the time of distribution. That court ruled that the portion of the distribution representing employer contributions credited to the taxpayer's account while the profit-sharing plan was qualified was entitled to capital gains treatment upon distribution. The remainder, representing employer contributions after the plan was disqualified, was to be treated as ordinary income. The court stated, 366 F.2d at 541:

There is no reason in the statute or elsewhere why we should not consider that portion of the 1959 distribution equivalent to the amount standing to taxpayer's credit in the profit-sharing trust before it became discriminatory in operation, as a distribution from an exempt trust, and so entitled to capital gains treatment. The remainder of the 1959 distribution represents a distribution from a discriminatory trust, and so is properly includable in taxpayer's 1959 income at ordinary income rates. Such a result seems consistent with the underlying purpose of the statute, since it affords capital gains treatment only so long as a profit-sharing trust remains nondiscriminatory in operation. Moreover, the result gains support in the language of §402(b), which envisages a year-by-year consideration of whether or not a profit-sharing trust is tax-exempt.

In *Pitt v. United States, supra,* the court expressly adopted the *Greenwald* rationale in granting the taxpayers' motion for summary judgment. The Government argued that *Greenwald* was "wrong and contrary to the language of the statute." Nonetheless, the court ruled that the taxpayers were entitled

---

[9]When *Greenwald v. Commissioner,* 366 F.2d 538 (2d Cir. 1966), affg. in part, revg. in part 44 T.C. 137 (1965), was decided, sec. 402(a)(2) provided as follows:

SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.
   (a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

*       *       *       *       *       *       *

   (2) CAPITAL GAINS TREATMENT FOR CERTAIN DISTRIBUTIONS.—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service, the amount of such distribution * * * shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * *

For sec. 402(a)(2) as it now reads, see note 8 *supra.*

to capital gains treatment for the portion of the distribution accumulated while the plan was qualified, and to ordinary income treatment for the portion representing contributions after the exempt status was revoked.[10]

In *Woodson v. Commissioner*, 73 T.C. 779 (1980), revd. 651 F.2d 1094 (5th Cir. 1981), a Court-reviewed opinion, we considered the relationship between sections 402(a) and 402(b) in deciding the proper way to tax a distribution from a trust that was exempt at the time contributions were made but nonexempt at the time of the distribution.

In *Woodson*, the taxpayers were participants in a profit-sharing trust from 1966 until 1974 when the trust was terminated, and the taxpayers' entire interests in the trust were distributed to them. The profit-sharing trust was exempt under section 501 and qualified under section 401(a) from 1966 until 1973, the effective date of the revocation of the trust's exemption. The revocation letter was dated July 30, 1975, after the distribution had been made, but was made effective as of April 1, 1973, similar to the retroactive revocation in the present case.

The distribution to the taxpayers, net of employee contributions, was $25,485.98. Of this net amount, $2,643.39 was attributable to contributions to the trust made by the employer after the trust had lost its exempt status. We held that this amount should be taxed under section 402(b) as ordinary income in 1974 but that the remaining $22,842.59 should be taxed under section 402(a) as a distribution from a qualified plan resulting in long-term capital gain. We held that "the assets in a distribution from a previously qualified plan should be separated. That part of the net distribution attributable to contributions to the trust, made prior to its disqualification, should be treated as a distribution from a qualified trust exempt from tax under section 501(a)." 73 T.C. at 786. We "harmonized" sections 402(a) and 402(b) by holding that the tax character of the distribution is to be determined by the status of the trust at the time the contribution is made to it by the employer.[11]

---

[10] *Pitt v. United States*, an unreported case (M.D. Fla. 1975, 35 AFTR 2d 75–1492, 75–1 USTC par. 9472), was in turn followed by *Dudinsky v. United States*, an unreported case (M.D. Fla. 1978, 46 AFTR 2d 80–5112, 78–2 USTC par. 9688).

[11] In *Sturdivant v. Commissioner*, T.C. Memo. 1980–38, we followed our decision in *Woodson v. Commissioner*, 73 T.C. 779 (1980), revd. 651 F.2d 1094 (5th Cir. 1981).

The Fifth Circuit reversed our *Woodson* case and held that a distribution from an employee trust not exempt at the time of the distribution was not entitled to capital gains treatment under section 402(a)(2). That court stated "Section 402(a)(2) explicitly limits capital gains treatment of 'lump sum distributions' to instances in which the *distribution* flows from an employee trust 'which *is* exempt from tax under section 501(a).' " 651 F.2d at 1095; emphasis in original. We had interpreted the section 402(a)(2) language "which is exempt from tax" as referring to the time the employer makes contributions to the trust. Our analysis was that while the timing of the tax is determined by the timing of the distribution, the *tax character* of the distribution is determined by the status of the trust at the time contributions are made to it. 73 T.C. at 784–785.

The Fifth Circuit rejected this analysis and stated that the definition of a "lump sum distribution" in section 402(e)(4), which was added in 1974, supported the position that the tax character of the distribution was determined by the status of the trust on the date of distribution.[12] Section 402(e)(4) defines

----

[12] Sec. 402(e)(4) provides:

(4) DEFINITIONS AND SPECIAL RULES.—

(A) LUMP SUM DISTRIBUTION.—For purposes of this section and section 403, the term "lump sum distribution" means the distribution or payment within one taxable year of the balance to the credit of an employee which becomes payable to the recipient—

(i) on account of the employee's death,

(ii) after the employee attains age 59½,

(iii) on account of the employee's separation from the service, or

(iv) after the employee has become disabled (within the meaning of section 72(m)(7))

from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501 or from a plan described in section 403(a). Clause (iii) of this subparagraph shall be applied only with respect to an individual who is an employee without regard to section 401(c)(1), and clause (iv) shall be applied only with respect to an employee within the meaning of section 401(c)(1). Except for purposes of subsection (a)(2) and section 403(a)(2), a distribution of an annuity contract from a trust or annuity plan referred to in the first sentence of this subparagraph shall be treated as a lump sum distribution. For purposes of this subparagraph, a distribution to two or more trusts shall be treated as a distribution to one recipient.

(B) ELECTION OF LUMP SUM TREATMENT.—For purposes of this section and section 403, no amount which is not an annuity contract may be treated as a lump sum distribution under subparagraph (A) unless the taxpayer elects for the taxable year to have all such amounts received during such year so treated at the time and in the manner provided under regulations prescribed by the Secretary. Not more than one election may be made under this subparagraph with respect to any individual after such individual has attained age 59½. No election may be made under this subparagraph by any taxpayer other than an individual, an estate, or a trust. In the case of a lump sum distribution made with respect to an employee to two or more trusts, the election under this subparagraph shall be made by the personal representative of the employee.

(C) AGGREGATION OF CERTAIN TRUSTS AND PLANS.—For purposes of determining the balance to the credit of an employee under subparagraph (A)—

a "lump sum distribution" as a distribution from a trust "which forms a part of a plan described in section 401(a) and

(i) all trusts which are part of a plan shall be treated as a single trust, all pension plans maintained by the employer shall be treated as a single plan, all profit-sharing plans maintained by the employer shall be treated as a single plan, and all stock bonus plans maintained by the employer shall be treated as a single plan, and

(ii) trusts which are not qualified trusts under section 401(a) and annuity contracts which do not satisfy the requirements of section 404(a)(2) shall not be taken into account.

(D) TOTAL TAXABLE AMOUNT.—For purposes of this section and section 403, the term "total taxable amount" means, with respect to a lump sum distribution, the amount of such distribution which exceeds the sum of—

(i) the amounts considered contributed by the employee (determined by applying section 72(f)), which employee contributions shall be reduced by any amounts theretofore distributed to him which were not includible in gross income, and

(ii) the net unrealized appreciation attributable to that part of the distribution which consists of the securities of the employer corporation so distributed.

(E) ORDINARY INCOME PORTION.—For purposes of this section, the term "ordinary income portion" means, with respect to a lump sum distribution, so much of the total taxable amount of such distribution as is equal to the product of such total taxable amount multiplied by a fraction—

(i) the numerator of which is the number of calendar years of active participation by the employee in such plan after December 31, 1973, and

(ii) the denominator of which is the number of calendar years of active participation by the employee in such plan.

(F) EMPLOYEE.—For purposes of this subsection and subsection (a)(2), except as otherwise provided in subparagraph (A), the term "employee" includes an individual who is an employee within the meaning of section 401(c)(1) and the employer of such individual is the person treated as his employer under section 401(c)(4).

(G) COMMUNITY PROPERTY LAWS.—The provisions of this subsection, other than paragraph (3), shall be applied without regard to community property laws.

(H) MINIMUM PERIOD OF SERVICE.—For purposes of this subsection (but not for purposes of subsection (a)(2) or section 403(a)(2)(A)), no amount distributed to an employee from or under a plan may be treated as a lump sum distributed under subparagraph (A) unless he has been a participant in the plan for 5 or more taxable years before the taxable year in which such amounts are distributed.

(I) AMOUNTS SUBJECT TO PENALTY.—This subsection shall not apply to amounts described in clause (ii) of subparagraph (A) of section 72(m)(5) to the extent that section 72(m)(5) applies to such amounts.

(J) UNREALIZED APPRECIATION OF EMPLOYER SECURITIES.—In the case of any distribution including securities of the employer corporation which, without regard to the requirement of subparagraph (H), would be treated as a lump sum distribution under subparagraph (A), there shall be excluded from gross income the net unrealized appreciation attributable to that part of the distribution which consists of securities of the employer corporation so distributed. In the case of any such distribution or any lump sum distribution including securities of the employer corporation, the amount of net unrealized appreciation of such securities and the resulting adjustments to the basis of such securities shall be determined under regulations prescribed by the Secretary.

(K) SECURITIES.—For purposes of this subsection, the terms "securities" and "securities of the employer corporation" have the respective meanings provided by subsection (a)(3).

(L) ELECTION TO TREAT PRE–1974 PARTICIPATION AS POST–1973 PARTICIPATION.—For purposes of subparagraph (E), subsection (a)(2), and section 403(a)(2), if a taxpayer elects (at the time and in the manner provided under regulations prescribed by the Secretary), all calendar years of an employee's active participation in all plans in which the employee has been an active participant shall be considered years of active participation by such employee after December 31, 1973. An election made under this subparagraph, once made, shall be irrevocable and shall apply to all lump-sum distributions received by the taxpayer with respect to the employee. This subparagraph shall not apply if the taxpayer received a lump-sum distribution in a previous taxable

which is exempt from tax under section 501." We believe this language does not undercut our analysis in *Woodson v. Commissioner, supra.* Section 402(e)(4) adds nothing beyond the requirements already found in the earlier prefatory language of both sections 402(a)(2) and 402(a)(5) that spoke of an employee trust described in section 401(a), which is exempt from tax under section 501(a). We think the use of the present tense and the word "is" speak to the requirement for the exempt status but do not speak to *when* that required status must exist. Therefore, with all due respect to the Fifth Circuit, we decline to follow its interpretation and we continue to interpret the language "which is exempt from tax under section 501" to refer to the status of the trust at the time the contributions are made to it.

In addition to its reliance on section 402(e)(4), the Fifth Circuit also relied on section 1.402(a)–1(a)(1)(ii), Income Tax Regs., which states:

> The provisions of section 402(a) relate only to a distribution by a trust described in section 401(a) which is exempt under section 501(a) for the taxable year of the trust in which the distribution is made. * * *

This regulation was not discussed in *Greenwald v. Commissioner, supra,* or in our *Woodson* opinion. The Fifth Circuit has been the only court to mention this regulation. We doubt that this regulation addresses the problem before the Court, since section 1.402(a)–1(a)(1)(v), Income Tax Regs., expressly provides: "If the trust is not exempt at the time the distribution is received by or made available to the employee, see section 402(b) and paragraph (b) of sec. 1.402(b)–1." Thereafter, section 1.402(b)–1(b)(1), Income Tax Regs., provides:

> When an employees' trust that was exempt under section 501(a) ceases to be so exempt, an employee shall include in his gross income only amounts contributed to the trust during a taxable year of the employer that ends within or with a taxable year of the trust in which it is not so exempt (to the same extent as if the trust had not been so exempt in all prior taxable years).

year of the employee beginning after December 31, 1975, unless no portion of such lump-sum distribution was treated under section 402(a)(2) or 403(a)(2) as gain from the sale or exchange of a capital asset held for more than 6 months [9 months for taxable years beginning in 1977; 1 year for taxable years beginning after December 31, 1977].

These two regulations promulgated much later than section 1.402(a)–1(a)(1)(ii) could be viewed as conflicting with the earlier regulation or all of these regulations can be viewed as not squarely addressing the hybrid problem before the Court.

We believe that our analysis in *Woodson v. Commissioner, supra,* is correct and we will continue to adhere to that rationale. See note 5 *supra.* In so ruling, we hold that to the extent section 1.402(a)–1(a)(1)(ii), Income Tax Regs., refers solely to the status of a trust at the time of distribution for determining whether the distribution can be rolled over into an IRA, it is invalid.

We have a high regard for Treasury regulations and do not invalidate a regulation lightly. See *Bingler v. Johnson,* 394 U.S. 741, 749–751 (1969); *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496 (1948). We are especially cautious since this regulation is long standing.[13] However, the Supreme Court has invalidated Treasury regulations that are inconsistent with or go beyond the statute. See, e.g., *United States v. Vogel Fertilizer Co.,* 455 U.S. 16 (1982); *United States v. Cartwright,* 411 U.S. 546 (1973); *United States v. Calamaro,* 354 U.S. 351 (1957). We have also overturned regulations that exceed the scope of the statute, are plainly inconsistent with the statute, are out of harmony with the statute, or are unreasonable. See, e.g., *Edward L. Stephenson Trust v. Commissioner,* 81 T.C. 283 (1983); *Durbin Paper Stock Co. v. Commissioner,* 80 T.C. 252 (1983); *Gresham v. Commissioner,* 79 T.C. 322 (1982), on appeal (10th Cir., Jan. 24, 1983); *Estate of Boeshore v. Commissioner,* 78 T.C. 523 (1982); *State of Washington v. Commissioner,* 77 T.C. 656 (1981), affd. 692 F.2d 128 (D.C. Cir. 1982); *Arrow Fastener Co. v. Commissioner,* 76 T.C. 423 (1981). A regulation is not a reasonable statutory interpretation unless it harmonizes with the statute. *United States v. Vogel Fertilizer Co., supra; National Muffler Dealers Ass'n., Inc. v. United States,* 440 U.S. 472, 477 (1979); *Durbin Paper Stock Co. v. Commissioner,* 80 T.C. at 257.

The crucial statutory language in this case is found in the definition of a "qualified trust" in section 402(a)(5)(D)(iii): "The term 'qualified trust' means an employees' trust described in section 401(a) which is exempt from tax under section 501(a)."

[13]The language of sec. 1.402(a)–1(a)(1)(ii) was originally provided in sec. 29.165–6, Regs. 111. The same language was also in sec. 39.165–6(a)(1), Regs. 118.

This language is clear as to the "what" but not as to the "when." This language, like the language of section 402(a)(2), is clear as to the status requirement but not as to the time such status must exist. Whether Congress intended the phrase "which is exempt" to require that the trust be exempt at the time of distribution or at the time of contribution is the question.

In section 1.402(a)–1(a)(1)(ii), Income Tax Regs., the Secretary apparently has determined that the phrase ("which is exempt") is intended to specify that the trust must be exempt at the time of distribution to qualify of capital gains treatment under section 402(a)(2). Respondent argues here that the same result applies for qualification for rollover treatment under section 402(a)(5). Respondent has promulgated section 1.402(a)–1(a)(1)(ii), Income Tax Regs., under his general authority granted by section 7805(a) to promulgate "all needful rules and regulations." We therefore owe his interpretation less deference than a legislative regulation issued under a specific statutory grant of authority. *United States v. Vogel Fertilizer Co., supra.* We have examined sections 402(a) and 402(b) and the legislative history to determine the congressional intent. This examination leads us to conclude that Congress intended to identify the trust as exempt or nonexempt as of the time of contribution. The regulation is therefore invalid because it is both out of harmony with the statute and unreasonable.

The statutory scheme of sections 402(a) and 402(b) contemplates distributions from two different types of retirement plans. Section 402(a) deals with distributions from qualified plans and section 402(b) deals with distributions from nonqualified plans. Retirement plans can, however, change their status. Qualified plans can become disqualified and nonqualified plans can become qualified. Congress did not expressly provide for the tax treatment of distributions from a trust that had occupied both an exempt and a nonexempt status at differing times. See *Woodson v. Commissioner,* 73 T.C. at 784; *Hesse v. United States, supra.* If a nonexempt trust becomes exempt in a later year and then makes a distribution, the distribution is not taxed as if it were a distribution solely from an exempt trust. If it were so treated, taxpayers would be taxed on the same amounts twice: once when the contributions

were made under section 402(b) and again at the time of distribution under section 402(a). However, this harsh result does not occur. The contributions to the trust that were included in the employee's income at the time the trust was nonexempt are deemed to give the taxpayer a basis against which to offset the amount of the later distribution. See sec. 1.402(a)–1(a)(1)(iv), Income Tax Regs.,[14] *Woodson v. Commissioner*, 73 T.C. at 785. The amount exceeding such basis is taxable under section 402(b) as section 72 income in the year of the distribution. Any contribution made to the trust after it became exempt would not be taxed under section 402(b) at the time of contribution, but, upon distribution, would be taxed under section 402(a). Thus, the status of the trust at the time the contributions were made determines the way that this distribution is taxed. See *Woodson v. Commissioner*, 73 T.C. at 785.

Similarly, in the situation where an exempt trust later becomes nonexempt, as in this case, the status of the trust at the time the contributions are made should also determine the tax treatment of the distribution. This symmetrical result further harmonizes section 402(a) and section 402(b). See *Woodson v. Commissioner*, 73 T.C. at 784.

Respondent's position is that the entire distribution should be taxed to petitioner as ordinary income under section 402(b) simply because on the date of the distribution the trust was no longer exempt. However, the whole tenor of section 402(b) is that the distributions taxed by section 402(b) are based on contributions to a trust that is nonexempt at the time of contribution, and this is entirely without regard to the status of the trust at the time of distribution.[15] In this case, the

---

[14]Sec. 1.402(a)–1(a)(1)(iv), Income Tax Regs., provides:

(iv) If a trust is exempt for the taxable year in which the distribution occurs, but was not so exempt for one or more prior taxable years under section 501(a) (or under section 165(a) of the Internal Revenue Code of 1939 for years to which such section was applicable) the contributions of the employer which were includible in the gross income of the employee for the taxable year when made shall, in accordance with section 72(f), also be treated as part of the consideration paid by the employee.

[15]As we stated in *Woodson v. Commissioner*, 73 T.C. at 785:

"The second sentence of section 402(b) implies that Congress intended to prevent contributions, which were made to a nonexempt trust, from acquiring the benefits of an exempt trust at the time of distribution. Therefore, even if the nonexempt trust became a qualified trust in some later taxable year, the amount contributed in the earlier years would be taxable under section 402(b) as section 72 income in the year of distribution, an obviously appropriate result. * * * "

parties have stipulated that all of the contributions were made to an exempt trust. Therefore, section 402(b) does not apply to this distribution. Section 402(b) expressly requires a yearly determination of a plan's qualified status. We conclude that the benefits of qualification also attach on a year-by-year basis rather than just in the year of distribution. *Greenwald v. Commissioner, supra; Woodson v. Commissioner, supra.* We repeat what we stated in *Woodson v. Commissioner,* 73 T.C. at 784:

> We refuse to take an all-or-nothing approach. We have found no congressional mandate requiring such an approach. Absent such a mandate, we refuse to adopt a rule of law that would cause such inequities. * * * The loss of an exemption should not convert existing qualified assets in an exempt trust to nonqualified assets in a nonexempt trust. To hold otherwise would create a rule of law that would penalize the innocent employee who had no say in the management of the trust and retroactively change the ground rules that he would fairly have anticipated would govern the taxability of payments to him.[16]

Our decision is also based on policies expressed by Congress in providing for favorable treatment of distributions from retirement plans. Congress has expressed concern with problems of bunched income and protection of individual pension rights, especially in enabling individuals to plan for their retirement. Respondent's interpretation of the statute conflicts with and frustrates these congressional objectives.

The taxation of lump-sum distributions from employees' trusts as capital gain originated with section 162(a) of the Revenue Act of 1942.[17] Congress sought to mitigate the hardship caused by such a lump-sum distribution. A total

---

[16]See also *Hesse v. United States,* an unreported case (E.D. Mo. 1980, 47 AFTR 2d 81–1024, 81–1026, 81–1 USTC par. 9153, at 86, 212), where that court stated: "Certainly if the Internal Revenue Service retroactively disqualified the Plan, retroactive treatment of the distribution seems only logical. To hold otherwise, leaves the government with all the aces."

[17]Sec. 162(a) of the Revenue Act of 1942, 56 Stat. 798, 862–863, added sec. 165(b) to the Internal Revenue Code of 1939.

SEC. 165. EMPLOYEES' TRUSTS.

(b) TAXABILITY OF BENEFICIARY.—The amount actually distributed or made available to any distributee by any such trust shall be taxable to him, in the year in which so distributed or made available, under section 22(b)(2) as if it were an annuity the consideration for which is the amount contributed by the employee, except that if the total distributions payable with respect to any employee are paid to the distributee within one taxable year of the distributee on account of the employee's separation from the service, the amount of such distribution to the extent exceeding the amounts contributed by the employee shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * *

distribution in 1 taxable year that was based on an accumulation over many years would subject the distribution to tax at a much higher rate than would apply if it were included in the employee's gross income ratably over the years involved. Thus, Congress provided for capital gains treatment of lump-sum distributions to alleviate the bunching of income problem. See S. Rept. 1631, 77th Cong., 2d Sess. 138 (1942), 1942–2 C.B. 504, 607.

However, this capital gains treatment was criticized because it afforded lump-sum distributions more favorable tax treatment than compensation that was paid currently. Thus, under the Tax Reform Act of 1969, capital gains treatment was limited to only that portion of a lump-sum distribution attributable to contributions made before 1970. Thus, Congress itself made the tax treatment dependent upon the time of the contributions. The portion of the distribution attributable to amounts contributed after 1969 was treated as ordinary income subject to 7 year forward averaging. See sec. 515, Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487, 643–646, 1969–3 C.B. 10, 101–102; H. Rept. 91–413 (1969), 1969–3 C.B. 200, 296–298; S. Rept. 91–552 (1969), 1969–3 C.B. 423, 550–552. The 7-year forward averaging provisions demonstrated that Congress was still concerned with the problem of bunched income.

Congress again modified the taxation of lump-sum distributions in the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L 93–406, 88 Stat. 829, 1974–3 C.B. 1. Under ERISA, lump-sum distributions are treated under section 402(a)(2) and section 402(e). The portion of the distribution attributable to post-1973 years is taxed as ordinary income subject to 10-year averaging. The portion attributable to contributions and accumulations prior to 1974 receives long-term capital gains. With respect to the pre-1974 contributions and accumulations, the taxpayer may elect to treat that amount as attributable to post-1973 years. Sec. 402(e)(4)(L). The House report accompanying this statute, H. Rept. 93–807 (1974), 1974–3 C.B. (Supp.) 236, 385, states that "Ten-year averaging is provided to recognize the fact that the distribution represents compensation which generally is received spread out over the taxpayer's life beginning with the time he retires. Ten-year averaging, insofar as the size of the tax is

concerned, achieves this result." Congress believed it would be unfair to use the high tax rate that would be applicable if the distribution were treated as received wholly in 1 year. As a result of the averaging, the distribution would be taxed roughly as if it were received in 10 equal parts over 10 years. Thus, Congress has continued to be sensitive to the problem of bunched income in taxing distributions from qualified plans.

Even with respect to the taxation of nonqualified plans, Congress has been concerned with the problem of bunched income. Under section 402(b), contributions made to a trust in a year in which the associated plan is not qualified are taxable as ordinary income to the extent the employee's interest in the contribution is substantially vested. Sec. 402(b) and sec. 1.402(b)–1(a)(1), Income Tax Regs.[18] A distribution from this trust is taxed according to the rules of section 72 relating to annuity contracts. Sec. 402(b). Under the rules of section 72, an employee is generally not taxed on amounts he receives unless such amounts exceed the consideration paid for the contract. Section 72(f) treats employer contributions that have been includable in the employee's gross income as consideration contributed by the employee. Section 1.402(b)–1(c), Income Tax Regs., refers to section 72(f) and thus treats employer contributions to a nonexempt trust that have been included in the employee's gross income as consideration paid by the employee. Thus, the employee is taxed currently on employer contributions to a nonexempt trust, building up a basis in the amount. Upon a lump-sum distribution, that basis is offset against the amount of the distribution, thus avoiding the problem of bunched income.

In this case, all contributions to the employees' trust were made when the plan was qualified and thus were not currently taxed to petitioner as they were made. Petitioner therefore has not built up any basis to offset against the 1977 distribution. If the distribution were taxed to petitioner wholly as ordinary income in 1977, he would be treated more harshly than if the plan had never been qualified at all. This punitive aspect is also contrary to Congress' overall purpose in passing ERISA:

---

[18]Sec. 402(b) refers to the rules of sec. 83 for taxation of contributions. Sec. 83 generally provides that the time of inclusion would be when the employee's rights are not subject to a substantial risk of forfeiture.

"The primary purpose of the bill is the protection of individual pension rights." H. Rept. 93–533 (1974), 1974–3 C.B. 210.

To treat the distribution in issue here solely as a distribution from a nonqualified trust and plan would convert existing qualified assets in an exempt trust into nonqualified assets in a nonexempt trust. We were not willing to interpret section 402(a)(2) that way in *Woodson v. Commissioner, supra* at 784, and we are unwilling to interpret section 402(a)(5) that way in this case. To treat the distribution as from a nonqualified plan would conflict with the intentions expressed by Congress. Petitioner's individual pension benefits would not be protected, and the result of the distribution would be to bunch all of petitioner's income in the year of the distribution, thus also subjecting it to a higher rate of tax. We therefore hold that the distribution to petitioner may be rolled over tax free into an IRA pursuant to section 402(a)(5).

In order to take account of the matter referred to in note 2 *supra*,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

---

HAMBLEN, J., dissenting: Reducing the rhetoric of the majority opinion to commonsense form, the issue is very simple. The statutory scheme and requirement is that the trust be qualified at the time of distribution. The test is objective, not subjective. As stated by the Court of Appeals for the Fifth Circuit, the statute means exactly what it says. See *Woodson v. Commissioner*, 651 F.2d 1094 (5th Cir. 1981). For a distribution from an employee benefit trust to receive the favorable benefits which petitioner here seeks, the trust must be one "which is exempt under section 501(a)." The standard set forth is an absolute; it is an all or none-at-all requirement premised on the granting of specified benefits in exchange for continuous qualification. Such is not the case here, where the majority's interpretation forces a modification of the absolute "is" to include "was" or "appeared to be."

We are not here to rewrite the law enacted by Congress by "judicial interpolations, which find no support beyond the tax court's policy intuitions." *Woodson v. Commissioner, supra* at 1095. Rather, we are to *apply* the law as enacted by Congress. The long-standing Treasury regulation which the majority invalidates does just that and, accordingly, reflects congressional intent. The majority opinion does not. I dissent.

GOFFE, CHABOT, COHEN, and SWIFT, *JJ.*, agree with this dissent.