WILLIAM L. AND MARY R. MEYERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Meyers v. Commissioner
Docket No. 4943-94
United States Tax Court
T.C. Memo 1994-598; 1994 Tax Ct. Memo LEXIS 603; 68 T.C.M. (CCH) 1354; December 6, 1994, Filed *603 Decision will be entered under Rule 155. William L. and Mary R. Meyers, pro se. For respondent: Brian M. Harrington. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 22,438 in petitioners' Federal income taxes for 1989. The deficiency resulted from respondent's disallowance of use of the 10-year averaging method applied to petitioner William L. Meyers' (petitioner) distribution from a pension plan that was not qualified at the time of the distribution. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Syracuse, Indiana, at the time they filed their petition. At all times material to this case, petitioner was a medical doctor. On or about November 16, 1978, the professional corporation through which petitioner practiced his profession adopted the William L. Meyers, M.D., Inc. Pension and Profit Sharing Plan (the plan) *604 and created a trust to receive, hold, and distribute assets of the plan. On November 16, 1978, the Internal Revenue Service (IRS) issued a favorable determination letter concerning the qualified status of the plan and the trust. In 1987, petitioner began corresponding with the IRS concerning amendments to his plan necessitated by Federal statutory changes enacted after adoption of the plan. Some of petitioner's letters to the IRS went unanswered. In the summer of 1987, the plan paid $ 18,000 to a terminating nurse employee in settlement of her interest in the plan, after a dispute arose over the plan's failure to comply with the vesting requirements in the amended statutes. By 1988, petitioner was the only remaining participant in the plan, and contributions to the plan ceased. Beginning in September 1988, petitioner engaged in negotiations with IRS personnel concerning inactivation of the plan. On June 7, 1989, the IRS wrote to petitioner as follows: An examination was made of the Form 5500-C (Return/Report of Employee Benefit Plan) for the William L. Meyers M.D. Pension and Profit Sharing Plan for the period ending August 31, 1986. As a result of the examination, it *605 was determined that the plan had not been timely amended for the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248 [96 Stat. 324] (TEFRA), the Tax Reform Act of 1984, Pub. L. 98-369 [98 Stat. 494] (TRA '84), and the Retirement Equity Act of 1984, Pub. L. 98-397 [98 Stat. 1426] (REA). Since the plan was not timely amended, it failed to satisfy the requirements of section 401(a) of the Internal Revenue Code. Therefore, the plan was not qualified as a tax exempt trust as of the first day of the subject plan year. You have volunteered to file Forms 1040X to include in your income your vested amount of the contribution made to the plan by the corporation for the years 1985, 1986 and 1987. No contribution was made for the year 1988; therefore, no 1040X is due. It has been determined that no penalties will be assessed on any of the additional Federal Income Tax due on the Form 1040X for the subject years. Reasonable cause has been established. If you have any questions, please give me a call. Thank you again for your cooperation.
On March 21, 1990, a final revocation letter was sent, setting forth the following: This is a final revocation letter indicating *606 that the above named plan does not meet the requirements of section 401(a) of the Internal Revenue Code for the plan year(s) ending August 31, 1985, August 31, 1986, August 31, 1987, August 31, 1988 and August 31, 1989. The trust, if any, is not exempt under section 501(a) of the Code for the trust year(s) ending with or within the affected plan year(s). In addition, our favorable determination letter to you dated November 16, 1978 is revoked. The explanation of our revocation is the enclosed Attachment A.
Attachment A stated, in part, the following: The company's plan was not timely amended for TEFRA, TRA, and REA by the required compliance date(s) in accordance with IRC section 401(b) and the regulations thereunder. Notice 85-5 and Notice 86-3. Please refer to Attachment B for the required compliance date(s). Therefore, the plan was not qualified under IRC section 401(a) and the trust lost its tax-exempt status for the years ended August 31, 1985 through, and including, August 31, 1989. Further, the favorable determination letter issued to the plan on November 16, 1978 is hereby revoked for the plan years ending on and after August 31, 1985.
In 1989, petitioner *607 received a distribution of $ 95,564 from the trust. Petitioners reported $ 61,016 as a distribution on Form 4972, Tax on Lump-Sum Distributions, and claimed 10-year averaging treatment (apparently adjusting the reported amount for amounts previously reported on their returns for years after disqualification of the plan). Respondent determined that the distribution was not eligible for 10-year averaging because the plan was not qualified at the time of the distribution. OPINION Petitioner believes that he has been victimized by (1) failure of the IRS to assist him to amend his corporation's plan so that it would not be disqualified and (2) misrepresentation by the IRS of the amount of taxes that would be paid if he acquiesced in disqualification of the plan. He asks us to negate the deficiency as a sanction for wrongful conduct by the IRS. We are not persuaded that there were deliberate misrepresentations to petitioner. Even if we agreed with petitioner's characterization of the conduct of the Commissioner's agents, however, the determination of a deficiency cannot be avoided here. Section 402(e) (now section 402(d)) for 1989 provides that certain lump-sum distributions from *608 qualified pension plans may qualify for 10-year (or 5-year) averaging upon distribution to a beneficiary. In section 402(e)(4)(A) (now section 402(d)(4)), the term "lump-sum distribution" is defined as a distribution or payment "from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501 or from a plan described in section 403(a)" (dealing with employee annuities). Emphasis added. In Benbow v. Commissioner, 774 F.2d 740 (7th Cir. 1985), revg. and remanding 82 T.C. 941 (1984), the Court of Appeals for the Seventh Circuit held that a distribution from a trust that is not exempt in the year of distribution is not eligible for favorable tax treatment of lump-sum distributions that would be applied if the trust were qualified at the time of the distribution. The court relied on the language of section 402(a)(5), which (as then in effect) provided special tax treatment for a rollover distribution from a "qualified trust" defined as "an employees' trust described in section 401(a)which is exempt from tax under section 501(a)." Id. at 742; *609 emphasis added. This language is equivalent to that found in section 402(e)(4)(A). The Court of Appeals opinion in Benbow v. Commissioner, supra, dealt with taxpayers who were residents of Indiana and would be binding on us in this case. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). In any event, this Court has now agreed with the Courts of Appeals for the Seventh, Fifth, and Sixth Circuits and held that favorable tax treatment accorded distributions from qualified plans does not apply to distributions made after a plan becomes disqualified. Fazi v. Commissioner, 102 T.C. 695, 714 (1994); see Baetens v. Commissioner, 777 F.2d 1160 (6th Cir. 1985), revg. and remanding 82 T.C. 152 (1984); Benbow v. Commissioner, supra; Woodson v. Commissioner, 651 F.2d 1094 (5th Cir. 1981), revg. 73 T.C. 779 (1980). Thus, petitioner is not entitled to treat the distribution received from *610 the pension plan after its disqualification as a lump-sum distribution eligible for income averaging under section 402(e). Petitioner does not argue that the statutory language and the cases interpreting it are not applicable to the distribution that he received. He is asking that we not apply the law in this case because of what he feels were misrepresentations made to him. After he testified during trial, petitioner was asked whether he wished to present any further evidence. He stated that he did not. Subsequently, he wrote a letter to the Court stating that he had intended to call various representatives of the IRS but inadvertently failed to do so. The testimony that he sought from those individuals would not change the result, for the reasons set forth in this opinion. It is well established that statements made by representatives of the IRS, including mistaken advice to taxpayers, are not a ground for avoiding application of the tax laws and do not preclude the Commissioner's change of position. See, e.g., Dixon v. United States, 381 U.S. 68, 72-76 (1965); Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 183 (1957); *611 Manocchio v. Commissioner, 78 T.C. 989, 998-1003 (1982), affd. 710 F.2d 1400 (9th Cir. 1983) (permitting the Commissioner to change an announced position with respect to the deductibility of flight training expenses that had been reimbursed to veterans); Neri v. Commissioner, 54 T.C. 767, 771-772 (1970); cf. Adamcewicz v. Commissioner, T.C. Memo. 1994-361 (taxpayer could not rely on settlement with Appeals officer based on erroneous application of averaging method to pension plan distribution). In Schuster v. Commissioner, 800 F.2d 672, 676-677 (7th Cir. 1986), affg. 84 T.C. 764 (1985), for example, the Court of Appeals for the Seventh Circuit held that the wages earned by a Roman Catholic nun were includable in her gross income even if the Commissioner had reversed a longstanding administrative position permitting exclusion of such wages from income. Here, there is no reversal of position by the IRS but, at most, only mistaken advice by particular agents. Petitioner also contends that he has been denied *612 equal protection of the laws because his former nurse was allowed lump-sum treatment of her distribution. Assuming, without deciding (because of lack of evidence), that the factual premise of his argument is correct, it is also well established that a taxpayer is not entitled to erroneous treatment, even if another taxpayer or the same taxpayer in another year has received the benefit of an error. As we stated in Malinowski v. Commissioner, 71 T.C. 1120, 1128 (1979): It has long been the position of this Court that our responsibility is to apply the law to the facts of the case before us and to determine the tax liability of the parties before us; how the Commissioner may have treated other taxpayers has generally been considered irrelevant in making that determination. * * *
See Davis v. Commissioner, 65 T.C. 1014, 1022 (1976); Estate of Guenzel v. Commissioner, 28 T.C. 59, 63 (1957), affd. 258 F.2d 248 (8th Cir. 1958). Simply stated, taxpayers do not have a vested interest in errors by representatives of the U.S. Government. In her trial memorandum, *613 respondent recognizes that computation of the deficiency may be adjusted under section 402(b). Respondent did not object to receipt into evidence of documents attached to petitioners' trial memorandum. Those documents indicate that petitioners included in income contributions made for 1985, 1986, and 1987, in accordance with the IRS letter dated June 7, 1989, quoted in our findings. Only the previously untaxed portion of the distribution from the unqualified plan is taxable in 1989. See Fazi v. Commissioner, supra at 712-714. To take account of necessary adjustments, Decision will be entered under Rule 155.