Curtis B. WOODSON and Estate of Fern R. Woodson, etc., et al., Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 80-1657.

United States Court of Appeals, Fifth Circuit.

Unit A

July 29, 1981.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Acting Chief, Appellate Section, Michael L. Paup, Gary R. Allen,

David I. Pincus, Tax Div., U. S. Dept. of Justice, Washington, D. C., for respondent-appellant.

Curtis B. Woodson pro se.

Before THORNBERRY, COLEMAN and AINSWORTH, Circuit Judges.

THORNBERRY, Circuit Judge:

Section 402(a)(2) of the Internal Revenue Code of 1954[1] provides that, to a limited extent, a recipient of a lump sum distribution from an employee trust may treat a portion of the total taxable amount as capital gain rather than as ordinary income. The tax court held that the trust's status at the date of contribution—rather than at the date of distribution—controls eligibility for capital gains treatment of income. We disagree.

I.

Curtis B. Woodson (taxpayer) was president of Gibson Products Company, a small, family-owned corporation liquidated on December 9, 1974. From 1966 until September 9, 1974, the corporation had a profit-sharing trust, of which taxpayer was a member. The trust initially qualified for exemption from tax and retained that status during most but not all of its existence. Finding that "benefits were forfeited on partial termination of the plan and funds were diverted to purposes other than for the exclusive benefit of the participants," the Commissioner revoked, effective April 1, 1973, his prior determination that the

---

1. 26 U.S.C. § 402(a)(2). Section 402(a)(2) in part provides:

    *Capital gains treatment for portion of lump sum distributions.*—In the case of an employee trust described in section 401(a), which is exempt from tax under section 501(a), so much of the total taxable amount ... of a lump sum distribution as is equal to the product of such total taxable amount multiplied by a fraction—

    (A) the numerator of which is the number of calendar years of active participation by the employee in such plan before January 1, 1974, and

    (B) the denominator of which is the number of calendar years of active participation by the employee in such plan,

    shall be treated as a gain from the sale or exchange of a capital asset held for more than 1 year.

trust qualified for exemption from tax. Thus, although the bulk of taxpayer's contributions to the trust occurred while it was tax exempt, the lump sum distribution at issue occurred after the Commissioner had revoked that status.[2]

The tax court concluded that the portion of the distribution attributable to contributions made while the trust retained its tax-exempt status was a "lump sum distribution" within the meaning of section 402(a)(2) and thus qualified for treatment as capital gain. The court principally based its holding on the following equitable considerations:

> The loss of an exemption should not convert existing qualified assets in an exempt trust to nonqualified assets in a nonexempt trust. To hold otherwise would create a rule of law that would penalize the innocent employee who had no say in the management of the trust and retroactively change the ground rules that he could fairly have anticipated would govern the taxability of payments to him.

73 T.C. 779, at 784. The court felt free to fashion a rule that would prevent these untoward consequences, concluding that "Congress did not explicitly take care of the situation where a distribution is from a trust which had occupied both an exempt and nonexempt status at differing times." *Id.* at 784.

## II.

We disagree with the tax court's view that Congress has not spoken with clarity in this context. Section 402(a)(2) explicitly limits capital gains treatment of "lump sum distributions" to instances in which the *distribution* flows from an employee trust "which *is* exempt from tax under section 501(a)." To remove any doubt about its intent to legislate this limitation, Congress defined "lump sum distribution" as "the distribution or payment within one taxable year ... from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501 ...." 26 U.S.C. § 402(e)(4).[3]

Thus, to uphold the tax court's decision, we would have to interpret "is exempt" to mean "is or has been exempt" and to read "which forms a part of a plan" to say "which forms or has formed a part of a plan." These judicial interpolations, which find no support beyond the tax court's policy intuitions,[4] would radically extend the

---

2. On September 9, 1974, taxpayer received a lump sum distribution of $25,485.98. Of this sum, which represented his entire interest in the trust, $2,643.39 was attributable to contributions made after the revocation date.

3. The tax court relied on *Greenwald v. C. I. R.*, 366 F.2d 538 (2d Cir. 1966), a case which reversed the tax court's initial view on this subject, for the proposition that section 402(a)(2) is sufficiently ambiguous and elastic to permit the holding that the trust's status at the date of contribution controls capital-gains eligibility. *Greenwald*, however, was decided well before Congress further elucidated its position in section 402(e)(4), added by section 2005(a) of the Employee Retirement Income Security Act of 1974, P.L. 93–406, 88 Stat. 829. Moreover, the Second Circuit's view that ambiguities in this context should be resolved in favor of the taxpayer is the antithesis of the position, discussed below, taken by this Circuit in *United States v. Johnson*, 331 F.2d 943 (5th Cir. 1964).

4. As the dissenting judges pointedly noted, 73 T.C. 779, at 789 (footnotes omitted), there are policy considerations that support reading the statute to mean what it says:

> The majority herein ignore the fact that the lesson of their opinion is that a decision-maker who wishes to enhance his own fortune as a plan participant or as owner of the employer can do so with no risk of substantial loss of tax benefits .... The responsible employer will no doubt continue to adhere to the statute's requirements and the congressional concern for rank-and-file employees, but those who wish to divert as much as possible of their employees' plan assets from the rank and file will find that the majority's opinion affords them a valuable tool for tearing great holes in the protective scheme of sections 411(d)(3) ... and 401(a).

Furthermore, Congress has not been oblivious to the problems that arise from using plan disqualification as a means of enforcing compliance with the requirements of plan exemption, *see, e. g.*, S.Rep.No.93–383, 93rd Cong., 1st Sess., p. 108, and has introduced milder sanctions in other contexts. *See, e. g.*, §§ 4972, 4975, & 4971 of the Employee Retirement Income Security Act of 1974, *supra*. It is not for this Court or any other to arrogate the resolution of these competing policies. *Cf., Abdalla v. C. I. R.*, 647 F.2d 487 (5th Cir. 1981).

**1096**

scope of a statutory provision that itself provides for the gradual but complete elimination of capital gains treatment of distributions from employee trusts. But as this Court stated in *United States v. Johnson*, 331 F.2d 943, 954 (5th Cir. 1964): "[P]articipants in employees' trusts enjoy a favored position over other taxpayers difficult to rationalize. If they are to be further favored by extension of capital gains treatment ... Congress is the one to do it and say so plainly." In this instance, Congress has *not* done it and has said so plainly.

Furthermore, to uphold the tax court's ruling would abrogate a Treasury Regulation on point, which states unambiguously: "The provisions of section 402(a) relate only to a distribution by a trust described in section 401(a) which is exempt under section 501(a) for the taxable year of the trust in which the distribution is made." Section 1.402(a)–1(a)(1)(ii). This Treasury Regulation, which has existed in one form or another for several decades, unquestionably requires that the trust be tax exempt at the date of distribution in order to qualify for the capital-gains advantage. The Supreme Court recently reaffirmed the principle that courts should consider Treasury Regulations valid if they "implement the congressional mandate in some reasonable manner." *Rowan Companies, Inc. v. United States*, —— U.S. ——, ——, 101 S.Ct. 2288, 2293, 68 L.Ed.2d 814 (1981), *quoting, United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967). Since this particular regulation is squarely in accord with the plain, limiting language of the statute and with its deterrent purpose, we consider it valid.

Accordingly, the judgment below is REVERSED.