Donald L. BENBOW, Patricia J. Benbow, Earl R. Lueckel, Lois B. Lueckel, William H. Strong, and Ella K. Strong, Petitioners,

Daniel W. Cass, Jr., Barbara Cass, Frederic E. Saunders, and Mary Alice Saunders, Petitioners-Appellees,[1]

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 84–3036.

United States Court of Appeals, Seventh Circuit.

Argued April 25, 1985.

Decided Sept. 30, 1985.

1. The Casses and the Saunderses filed a joint Tax Court petition with three other couples (the Benbows, the Lueckels and the Strongs), and the Tax Court issued one opinion and decision with respect to all of the taxpayers. *Benbow v. Commissioner*, 82 T.C. 941 (1984). The Casses and Saunderses resided in Indiana when the petition was filed. The Benbows, Lueckels and Strongs lived in Ohio at the time of filing, and an appeal as to them is being prosecuted in the Sixth Circuit. 26 U.S.C. § 7482(b)(1)(A) (establishes venue in the circuit of the taxpayer's residence).

David I. Pincus, Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellant.

James S. Dacek, Cleveland, Ohio, for petitioners-appellees.

Before BAUER and WOOD, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Taxpayers Daniel W. Cass, Jr. and Frederic E. Saunders[2] were employees of Electric Cord Sets, Inc. In 1959 Electric Cord established a pension plan and related trust. In 1959, and again in 1963 upon the plan's amendment, the Commissioner of Internal Revenue (Commissioner) issued letters determining that the plan was "qualified" under § 401(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 401(a), and the trust was therefore exempt from tax under § 501(a) of the Code, 26 U.S.C. § 501(a).

On July 18, 1978, Electric Cord terminated the plan effective for the plan year ending December 31, 1977. In 1978 the trustees distributed the plan's assets to the participants, including taxpayers Cass and Saunders. Cass and Saunders then "rolled over" their distributions to individual retirement accounts (IRAs) relying on the tax-free rollover provisions of § 402(a)(5) of the Code. There had been no employee contributions.

In 1979 the plan and the trust were examined by the Commissioner. Based on this examination it was determined that the plan discriminated among salaried employees. A preliminary letter proposing revocation of the plan's qualified status under § 401(a), and the trust's exempt status under § 501(a), was issued by the Commissioner in September, 1979. On February 15, 1980 the Commissioner revoked the plan's qualified status and the trust's exempt status retroactively, effective as of January 1, 1976. Thus, when employer contributions were made in 1976 and 1977 and when the terminating distributions were made in 1978, the plan was not a tax-qualified plan and the trust was not exempt.

On audit the Commissioner determined that since the plan was not qualified at the date of distribution, the distributions from the trust in 1978 should have been reported as ordinary income and were ineligible for tax-free rollover treatment under § 402(a)(5) of the Code. The Commissioner also determined that the full amounts that the taxpayers had transferred into IRAs constituted "excess contributions" and thus were subject to the 6% excise tax of § 4973(a) of the Code.[3]

In the Tax Court taxpayers did not contest the Commissioner's determination that

---

**2.** Barbara Cass and Mary Alice Saunders are parties to this case solely by virtue of having filed joint returns with their husbands. For convenience we will refer to Daniel W. Cass and Frederic E. Saunders alone as "taxpayers."

**3.** The employer had made contributions after December 31, 1975. It would seem logical, giving full retroactive effect to the Commissioner's disqualification of the trust, to have determined deficiencies for 1976 and 1977, based on the taxability to these taxpayers of the employer's contributions to a non-exempt trust. Section 402(b). If that were done, presumably a smaller portion of the distribution would have been reflected in the deficiency for 1978. The parties, however, have not addressed this facet of the matter.

the plan was not qualified, nor the retroactive revocation of qualified status. They argued, however, that the tax treatment of the distributions should not be determined by the status of the plan at the time of distribution, but at the date of contributions to the trust. Thus, they argued that that portion of the distribution attributable to contributions made prior to January 1, 1976 should be entitled to the tax-free rollover treatment of § 402(a)(5).

The Tax Court agreed, holding that to the extent each 1978 distribution was attributable to pre-disqualification contributions, the amount thereof was to be treated as having been rolled over tax-free under § 402(a)(5), and not excess contribution to an IRA under § 4973. The remainder was treated as ordinary income under § 402(b). *Benbow v. Commissioner*, 82 T.C. 941 (1984). The Commissioner appeals.

But for the rollover claimed to be authorized by § 402(a)(5), and giving the disqualification retroactive effect, the distributions would be includible in taxpayers' gross incomes for 1978. Section 402(b).

Section 402(a)(5) provides in pertinent part:

(5) ROLLOVER AMOUNTS—

(A) GENERAL RULE.—if—

(i) the balance to the credit of an employee in a *qualified trust* is to be paid to him in a qualifying rollover distribution,

(ii) the employee transfers any portion of the property he receives in such distribution to an eligible retirement plan, and

(iii) in the case of a distribution other than money, the amount so transferred consists of the property distributed,

then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.

. . . .

(D) DEFINITIONS.—For purposes of this paragraph—

. . . .

(iii) QUALIFIED TRUST.—The term "qualified trust" means an employees' trust described in Section 401(a) *which is exempt from tax under section 501(a)*.

(Emphasis added.)

The Commissioner maintains that on its face the text of § 402(a)(5) requires that for a distribution from an employee benefit trust to receive the benefits of tax-free rollover treatment, the trust must be one "which *is* exempt under Section 501(a)" at the time of distribution. (Emphasis added.) We agree that this is the ordinary, clear meaning of the terms employed.

In *Woodson v. C.I.R.*, 651 F.2d 1094 (5th Cir.1981), the Fifth Circuit similarly interpreted § 402(a)(2) of the Code.[4] Section 402(a)(2) provides that, to a limited extent, a recipient of a lump sum distribution from an employee trust may treat a portion of the total taxable amount as capital gain rather than ordinary income. Sections 402(a)(2) and 402(a)(5) contain identical statutory requirements concerning the status of the trust necessary for the preferential tax treatment provided, *i.e.*, that it be one "which is exempt from tax under Section 501(a)." The parties agree there is no meaningful difference between these provisions. In *Woodson*, the Fifth Circuit held that "[s]ection 402(a)(2) explicitly limits

---

**4.** Section 402(a)(2) provides in part:

(2) *Capital gains treatment for portion of lump sum distributions.*—In the case of an employee trust described in section 401(a), *which is exempt from tax under section 501(a)* [emphasis added], so much of the total taxable amount (as defined in subparagraph (D) of subsection (e)(4)) of a lump sum distribution as is equal to the product of such total taxable amount multiplied by a fraction—

(A) the numerator of which is the number of calendar years of active participation by the employee in such plan before January 1, 1974, and

(B) the denominator of which is the number of calendar years of active participation by the employee in such plan,

shall be treated as a gain from the sale or exchange of a capital asset held for more than 1 year.

capital gains treatment of 'lump sum distributions' to instances in which the *distribution* flows from an employee trust 'which *is* exempt from tax under section 501(a).'" 651 F.2d at 1095. The court noted that to uphold the Tax Court's *Woodson* decision, which held that the trust's status at the date of contribution—rather than at the date of distribution—controlled eligibility for capital gains treatment, it "would have to interpret 'is exempt' to mean 'is or has been exempt' and to read 'which forms a part of a plan' [26 U.S.C. § 402(e)(4)(A) (definition of lump sum distribution)][5] to say 'which forms or has formed a part of a plan.'" 651 F.2d at 1095. The court also noted that

> to uphold the tax court's ruling would abrogate a Treasury Regulation on point, which states unambiguously: "The provisions of section 402(a) relate only to a distribution by a trust described in Section 401(a) which is exempt under Section 501(a) for the taxable year of the trust in which distribution is made." Section 1.402(a)–1(a)(1)(ii).

651 F.2d at 1096.

In *Woodson*, the Fifth Circuit declined to follow a 1966 Second Circuit decision, *Greenwald v. C.I.R.*, 366 F.2d 538 (2d Cir. 1966) which had reached the opposite conclusion. 651 F.2d at 1095 n. 3. The Treasury Regulation, quoted in *Woodson*, had not been referred to in *Greenwald*.

The Tax Court, though divided, has refused to follow *Woodson*. *See Baetens v. Commissioner*, 82 T.C. 152, 155 (1984), appeal docketed, No. 84–1471 (6th Cir.). It continues to adhere to its court-reviewed opinion in *Woodson v. Commissioner*, 73 T.C. 779 (1980), rev'd. 651 F.2d 1094 (5th Cir.1981) and *Greenwald v. C.I.R.*, 366 F.2d 538 (2d Cir.1966). Because in our case the Tax Court relied on its opinion in *Baetens*, we will direct our remarks to the opinion in that case.

The court in *Baetens* agreed that the critical statutory language at issue is "which is exempt from tax under section 501(a)" but concluded that "[t]his language is clear as to the 'what' but not as to the 'when,'" *i.e.*, clear as to the status requirement but not as to the time such status must exist. To resolve this alleged ambiguity in the language of § 402(a) the court looked to § 402(b). Section 402(b) deals with distributions from non-qualified plans. It provides that

> [c]ontributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt from tax under § 501(a) shall be included in the gross income of the employee.... The amount actually distributed or made available to any distributee by any such trust shall be taxable to him in the year in which so distributed....

26 U.S.C. § 402(b).

If a nonexempt trust becomes exempt in a later year and then makes a distribution, the distribution is not taxed as if it were a distribution solely from an exempt trust. If it were so treated taxpayers would be taxed twice on the amounts of contributions made while the trust was not exempt—once when the contributions were made under § 402(b) and again at the time of distribution under § 402(a). Instead, the contributions to the trust that were included in the employee's income at the time the trust was nonexempt are deemed to give the taxpayer a basis against which to offset the amount of the later distribution. *See* § 1.402(a)–1(a)(1)(iv), Income Tax Regulations. "Thus, the status of the trust at the time the contributions were made determines the way that this distribution is taxed." 82 T.C. at 166.

The Tax Court concluded that it would be a "symmetrical result," harmonizing

---

**5.** Section 402(e)(4)(A) provides in part:

(A) Lump Sum Distribution.—For purposes of this section and section 403, the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of

the balance to the credit of an employee ... from a trust *which forms part of a plan* described in section 401(a) and which *is* exempt from tax under section 501....
(Emphasis added.)

§§ 402(a) and (b), to hold that where an exempt trust later becomes non-exempt, the status of the trust at the time the contributions were made should also determine the tax treatment of the distribution. Because § 402(b) contemplates a determination whether a trust is exempt or not for each year in which contributions are made in order to decide whether contributions are included in gross income of the employee for that year, the Tax Court concluded that

> the benefits of qualification also attach on a year-by-year basis rather than just in the year of distribution.... "To hold otherwise would create a rule of law that would penalize the innocent employee who had no say in the management of the trust and retroactively change the ground rules that he would fairly have anticipated would govern the taxability of payments to him."

82 T.C. at 167 (quoting *Woodson v. Commissioner*, 73 T.C. at 784).

We do not agree with the Tax Court's conclusion that the language "which is exempt from tax under Section 501(a)" is ambiguous as to when exempt status must exist for a distribution to qualify for tax-free rollover treatment. Section 402(a)(5) explicitly limits tax-free rollover treatment to instances in which the *distribution* flows from an employee trust "which *is* exempt from tax under Section 501(a)." As we read the relevant provisions, they grant beneficiaries of employee trusts exempt under § 501(a) deferral of income tax on employer contributions and trust income while the plan is "qualified." 26 U.S.C. § 402(a). To realize the additional benefit of tax-free rollover treatment under § 402(a)(5) the trust must be exempt at the date of distribution. Any extension of the favored treatment specifically provided for in § 402(a)(5) is a function for the Congress, not the Courts. *Cf., Gunnison v. C.I.R.*, 461 F.2d 496, 499 (7th Cir.1972); *Woodson v. C.I.R.*, 651 F.2d 1094, 1096 (5th Cir.1981); *United States v. Johnson*, 331 F.2d 943, 954 (5th Cir.1964).

The substance of what the Tax Court has done, it seems to us, is to separate a distribution made on termination of a trust which is not exempt at the time of distribution into components. One component represents employer contributions in earlier years when the trust was exempt (presumably augmented by trust income during those years). That component is treated, for the purpose of § 402(a)(5) as if the trust "is" exempt at the time of distribution. Other components of the same distribution are treated as is the fact, *i.e.*, the trust is not exempt. We think this division into qualified and unqualified components and treatment of the former as a distribution of a trust which "is" exempt clearly exceeds the bounds of statutory interpretation.

The Tax Court notes that the Commissioner's position results in the "bunching" of taxable income and impairs the ability of individuals to plan for retirement. In response to hardship considerations the Commissioner points out that income averaging tends to alleviate the problem of bunched income, and that in any event, a taxpayer may well prefer deferral of tax during the years the trust was exempt even if bunching of income occurs in a later year. Any hardship in the assessment of an excise tax because a rollover thought to be authorized when made turns out to have been improper results from the retroactive effect of disqualification, not challenged here. The Tax Court in this case noted the possibility of "relief from this [excise] tax in one situation where the excess contributions may have been inadvertent. Sections 4973(b)(2)(B) and 408(d)(5)...." It happens here that the parties were able to agree on the amount of money to be allocated to the respective components of the distribution. The Commissioner points out that in many legally indistinguishable situations, particularly those involving defined-benefit plans, the Tax Court's holding will create "intractable" computational problems, requiring devising rules and formulae for solution. As acknowledged by the Tax Court in this case, "[w]e do not have precedent as to how to compute the amount of the 'quali-

fied assets' (*Baetens v. Commissioner*, 82 T.C. at 170) of a defined benefit plan."

Whatever the appropriate balance of all these considerations, viewed in the context of legislation, we find no demonstrable Congressional purpose so clearly frustrated by a straightforward reading of § 402(a)(5) as to legitimatize the result reached by the Tax Court in the name of statutory interpretation.

Having interpreted § 402(a)(5) as providing that the trust's status at the date of contribution—rather than at the date of distribution—determines eligibility for tax-free rollover treatment, the Tax Court, in *Baetens*, held Treas.Reg. § 1.402(a)-1(a)(1)(ii) invalid, finding it "out of harmony with the statute and unreasonable." 82 T.C. at 165.

Section 1.402(a)-1(a)(1)(ii) states:

> The provisions of section 402(a) relate only to a distribution by a trust described in section 401(a) which is exempt under section 501(a) for the taxable year of the trust in which the distribution is made.
>
> \*     \*     \*     \*     \*     \*

Despite the clear and unambiguous language of the treasury regulation and its consistency with the language of the statute itself, the *Baetens* court noted,

> [w]e doubt that this regulation addresses the problem before the Court, since section 1.402(a)-1(a)(1)(v), Income Tax Regs., expressly provides: "If the trust is not exempt at the time the distribution is received by or made available to the employee, see section 402(b) and paragraph (b) of sec. 1.402(b)-1." Thereafter, section 1.402(b)-1(b)(1), Income Tax Regs., provides:
>
>> When an employees' trust that was exempt under section 501(a) ceases to be so exempt, an employee shall include in his gross income only amounts *contributed* to the trust during a taxa-

ble year of the employer that ends within or with a taxable year of the trust in which not so exempt (to the same extent as if the trust had not been so exempt in all prior taxable years).

> These two regulations promulgated much later than section 1.402(a)-1(a)(1)(ii) could be viewed as conflicting with the earlier regulation or all of these regulations can be viewed as not squarely addressing the problem before the Court.

82 T.C. at 163–64 (emphasis added).

■ The two treasury regulations cited by the *Baetens* court do not in our opinion conflict with Treas.Reg. § 1.402(a)-1(a)(1)(ii) nor render it ambiguous or inapplicable. Section 1.402(b)-1(b)(1) clearly deals with the tax treatment of sums *contributed* to an ongoing trust which becomes non-exempt after being exempt, not with distributions from such a trust. Treasury Regulation § 1.402(b)-1(c)(1), T.D. 7554, 1978–2 C.B. 71, 85–87, formerly numbered 1.402(b)-1(b)(1),[6] provides:

> Taxation of distribution from a trust not exempt under section 501(a)—Any amount actually distributed or made available to any distributee by an employees' trust which is not exempt under section 501(a) for the taxable year of the trust in which the distribution is made shall be taxable in the year in which so distributed or made available.

Thus Treas.Reg. §§ 1.402(a)-1(a)(1)(ii) and 1.402(b)-1(c)(1) together leave no doubt that a distribution from a trust that is not exempt in the year of distribution is taxed under § 402(b) and is not eligible for the favorable tax treatment provided in § 402(a). Treasury Regulation § 1.402(a)-1(a)(1)(ii) is "squarely in accord with the plain, limiting language of the statute," *Woodson v. C.I.R.*, 651 F.2d at 1096, and we consider it valid.

**6.** In 1978 the Treasury Department promulgated certain amendments to § 1.402(b)-1 which had the effect of renumbering pre-1978 § 1.402(b)-1(b) as current § 1.402(b)-1(c)(1). T.D. 7554, 1978–2 C.B. 71, 85–87. The Department did not, however, amend the cross-referencing provision of section 1.402(a)-1(a)(1)(v) to reflect this change. Apparently this omission is what led the *Baetens* court to examine current section 1.402(b)-1(b) which clearly does not relate to the issue in *Baetens* or the case at bar.

Accordingly, the judgment below is REVERSED, and the cause REMANDED to the Tax Court for further proceedings consistent with this opinion.