Henry T. BOGGS and Jeanne Boggs, Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

Henry T. BOGGS and Jeanne Boggs, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

Nos. 85–1049, 85–1129.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1985.

Decided Feb. 27, 1986.

James R. Bailes and Howard R. Crews (Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, W. Va., on brief), for Boggs.

David I. Pincus (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Gary R.

Allen, Tax Div., Dept. of Justice, Washington, D.C., on brief), for Com'r.

Before HALL and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Henry T. Boggs and Jeanne Boggs, taxpayers, and the Commissioner of Internal Revenue appeal a judgment of the Tax Court that reduced a deficiency from $62,184 as assessed by the Commissioner to $6,520.[1] The Commissioner assessed the deficiency in 1978 after an audit of the taxpayers' 1976 income tax return disclosed that Henry T. Boggs had rolled over his share of the H.T. Boggs Company profit sharing trust into an individual retirement account (IRA). The taxpayers claim that the trust was qualified in 1976 and its assets were entitled to the favorable treatment accorded by I.R.C. § 402(a)(5).[2] Consequently, they assert that the rollover was tax free. The Commissioner contends that in 1978 he properly retroactively revoked the trust's qualification effective December 1, 1974, that the assets of the trust were not entitled to favorable treatment in 1976, and that the rollover was subject to tax.

The Tax Court held that the Commissioner did not abuse his discretion when he retroactively revoked the qualified status of the company's trust. The taxpayers assign error to this ruling. The Tax Court also held that the portion of the distribution from the trust attributable to the company's contributions made prior to December 1, 1974, could be rolled over tax free into the IRA. The Commissioner assigns error to this ruling, contending that the entire amount of the rollover in 1976 was taxable because the trust had been disqualified since 1974.[3] In view of our disposition

---

1. The Tax Court's opinion is reported as *Boggs v. Commissioner,* 83 T.C. 132 (1984).

2. Section 402(a)(5) provided in pertinent part:
 (A) *General rule.* If—
 (i) the balance to the credit of an employee in a qualified trust is paid to him in a qualifying rollover distribution

 \* \* \* \* \* \*

then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.

3. There is a split in the circuits whether assets contributed to a trust prior to its disqualification qualify for favorable tax treatment. The Second Circuit has held that such assets do qualify. *Greenwald v. Commissioner,* 366 F.2d 538 (2d Cir.1966). The Fifth, Sixth, and Seventh Circuits have rejected this position. *Woodson v.*

of this appeal, we do not address the Commissioner's assignment of error on this issue or several subsidiary assignments of error made by the parties.

We conclude that the Tax Court erred by upholding the Commissioner's retroactive revocation of the trust's qualified status because no material change of fact existed to support the Commissioner's action. Therefore, the trust was qualified at the time it was terminated and Boggs's share could be rolled over into his IRA without the imposition of a tax.

I

The Tax Court has set forth the facts, which were largely stipulated by the parties. *See* 83 T.C. at 133–39. The evidence pertaining to the retroactive revocation of the trust's qualified status can be briefly summarized. The company and the trust operated on a fiscal year beginning December 1 and ending November 30. In November 1962, the company established the trust for the benefit of its five salaried employees, including Henry T. Boggs, who was the majority stockholder and chief executive officer. The other 45 employees not covered by the trust were union members who were covered under a variety of union negotiated pension plans arrived at as a result of good faith collective bargaining. Pursuant to Treasury Regulation 26 C.F.R. § 1.401–3(f), the company designated the trust and the union pension plans as one plan for the purpose of satisfying the coverage requirements of I.R.C. § 401(a)(3). In December 1962, the Commissioner determined that the trust was qualified. It is

this ruling that the Commissioner in 1978 retroactively revoked effective December 1, 1974.

 The parties stipulated that the "trust continued in effect without amendment from 1962 until July of 1976, when the company determined that it should be terminated." They also stipulated that it "was a qualified trust in each of its fiscal years during the period beginning in 1962 and ending on November 30, 1973. The parties are in dispute concerning all subsequent years." A qualified trust does not discriminate in favor of officers, stockholders, supervisory personnel, or highly compensated employees—collectively referred to as the prohibited group—in terms of coverage, § 401(a)(3), or contributions, § 401(a)(4).[4] The parties' stipulation is unequivocal. The stipulated facts establish that the trust was qualified from 1962 through fiscal year 1973 with respect to both coverage and contributions. Relying on this stipulation, the taxpayers did not present evidence about contributions made to the trust or to the union pension funds prior to 1974.

The stipulated facts disclose that in 1974 the company's aggregate contributions to the trust were $15,291.17 and its contributions to a representative union pension fund were $34,134.99. The parties also stipulated that in 1975 and 1976 the company contributed nothing to the trust. Its contribution to the union pension fund aggregated $43,358.20 in 1975 and $29,-783.62 in 1976.

*Commissioner,* 651 F.2d 1094 (5th Cir.1981); *Baetens v. Commissioner,* 777 F.2d 1160 (6th Cir.1985); *Benbow v. Commissioner,* 774 F.2d 740 (7th Cir.1985).

**4.** For the tax years in issue, I.R.C. § 401(a) provided in pertinent part:

*Requirements for Qualification.* A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan ... shall constitute a qualified trust under this section—

&ast; &ast; &ast; &ast; &ast; &ast;

(3) if the trust, or two or more trusts ... are designated by the employer as constitut-

ing parts of a plan intended to qualify under this subsection which benefits ...

(A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan ...

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

The Commissioner contends that the combined plan was discriminatory in 1974 because contributions on behalf of the prohibited group were 19.2% of their total compensation while contributions for union employees averaged only 10% of their compensation. The taxpayers contend that the disparate ratio of contributions to compensation was a temporary aberration that was fully remedied in 1975 and 1976 when 100% of the company's contributions were made to the union pension funds.

The Tax Court held that the combined plan satisfied the coverage requirements of § 401(a)(3) because at all times 100% of the employees were covered. With respect to contributions, it accepted the Commissioner's position that in 1974 the disparity in the ratio of contributions to compensation between the prohibited group and the union employees established that the plan discriminated against the union employees in violation of § 401(a)(4). Consequently, the plan was not qualified in fiscal year 1974. In reaching this decision, the Tax Court noted:

> This profit-sharing plan seems to fall within the harsh situation this Court has often alluded to in commenting on the difficulty, if not impossibility, for a small company most of whose employees are union members covered by union pension plans to set up a qualified plan for salaried employees, most of whom fall within the prohibited group.... Most of that difficulty has been eliminated prospectively by ERISA, but unfortunately those changes in the law cannot help [the taxpayers].

83 T.C. at 148 n. 6.

The Tax Court found that H.T. Boggs relied on the Commissioner's ruling of 1962 and believed that the trust was qualified in 1976 when he rolled over his share into his IRA upon termination of the trust. The Tax Court, however, upheld the Commissioner's 1978 retroactive revocation of the qualification of the trust effective December 1, 1974. It ruled, therefore, that the trust was disqualified when its assets were distributed in 1976.

We sustain the Tax Court's decision that although the trust was qualified with respect to coverage, it was disqualified with respect to contributions in fiscal year 1974. The critical question remains whether the Commissioner abused his discretion when in 1978 he retroactively revoked his 1962 ruling effective December 1, 1974.

## II

■ The Commissioner has authority to revoke retroactively a ruling. *See* I.R.C. § 7805(b); *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 183–84, 77 S.Ct. 707, 709–10, 1 L.Ed.2d 746 (1957). The Commissioner has limited his discretion to take such action in Statement of Procedural Rules, 26 C.F.R. § 601.201(1)(5) (1985), which provides:

> Except in rare or unusual circumstances, the revocation or modification of a ruling will not be applied retroactively with respect to the taxpayer to whom the ruling was originally issued or to a taxpayer whose tax liability was directly involved in such ruling if (i) there has been no misstatement or omission of material facts, (ii) the facts subsequently developed are not materially different from the facts on which the ruling was based, (iii) there has been no change in the applicable law, (iv) the ruling was originally issued with respect to a prospective or proposed transaction, and (v) the taxpayer directly involved in the ruling acted in good faith in reliance upon the ruling and the retroactive revocation would be to his detriment.

Relying on the condition designated as (ii) in the rule, the Commissioner contends that retroactive revocation was permissible because the facts subsequently developed are materially different from the facts on which the ruling was based.

■ The only change of fact that the Commissioner identifies as being material is the departure in 1972 of two salaried employees who were participants in the trust and who were not members of the prohibited group. In 1962, when the trust was established, five employees were cov-

ered, three of whom were members of the prohibited group. Upon the departure of the two employees in 1972, all of the participants in the trust were members of the prohibited group. The Commissioner argues: "[T]his change constituted a material change that warranted the Commissioner's retroactive revocation of his prior ruling." Brief at 29.

The Tax Court, accepting the Commissioner's reason for retroactively revoking the 1962 ruling, held:

It is clear that respondent has the statutory authority to revoke a ruling retroactively. Sec. 7805(b). We will not disturb respondent's decision to make the revocation retroactive unless he has abused his discretion. . . . Respondent has announced that a ruling will not, in the absence of rare and unusual circumstances, be revoked retroactively if certain conditions are met. . . . Among the numerous conditions imposed by the procedural regulation is that there be no material change in the facts upon which the prior ruling was based. Petitioner has clearly failed to satisfy this condition. The composition of the participants in the trust did change from that extant when respondent issued his favorable ruling in 1962. We cannot say respondent abused his discretion by retroactively revoking the trust's qualified status.

83 T.C. at 149–50.

The Commissioner's argument overlooks the fact that the company designated the trust and the union pensions as constituting one plan. Therefore, the materiality of the departure of two salaried employees in 1972 has to be examined in light of the combined plan.

When the combined plan is considered, it is evident that the company has always satisfied the coverage requirements of § 401(a)(3) because all of the employees were covered. The departure of two salaried employees in 1972 did not change that status. Indeed, the Tax Court held:

Section 1.401–3(f), Income Tax Regs., provides, in part, that "An employer may

designate several trusts * * * as constituting one plan which is intended to qualify under section 401(a)(3), in which case all such trusts * * * taken as a whole may meet the requirements of such section." The parties have stipulated that the company made such a designation with respect to the trust and the various union plans. When viewed in this light, it is clear that the coverage requirements of section 401(a)(3) were at all times satisfied, since 100 percent of the company's employees were covered under either the trust or one of the union plans. Considered together as a single plan or trust, it readily met the safe-harbor provision of section 401(a)(3)(A), and respondent concedes as much on brief. Further discussion of this point would be superfluous.

83 T.C. at 142. We conclude, therefore, that the departure of the two salaried employees in 1972 did not affect the coverage of the combined plan.

With respect to discrimination in contributions to the trust and the union pensions in 1974, the Tax Court ruled:

Since the company has designated the various union plans and the trust herein as one plan intended to qualify under section 401(a)(3) for coverage purposes, we also consider them as one plan in testing for the prohibited discrimination.

83 T.C. at 142. The Tax Court observed that "the analysis of the contributions issue is the same, with or without those two employees, because we are considering the combined plan." 83 T.C. at 146. Thus, the departure of the two employees did not affect the discriminatory contribution that occurred in 1974.

In sum, the Tax Court properly held that coverage and contributions should be considered in the context of the combined plan. The Tax Court found that the departure of the two employees did not disqualify the plan with respect to coverage and that the analysis of the 1974 contributions would be the same with or without them. These findings are amply supported by the evidence. We conclude, therefore, that the

departure of two salaried employees in 1972 was not material to either the coverage or the contribution requirements of the Code.

The Commissioner is required to abide by Treasury Regulation 26 C.F.R. § 601.-201(1)(5) because it is reasonably based on I.R.C. § 7805(b). *Lansons, Inc. v. Commissioner*, 622 F.2d 774, 776–77 (5th Cir. 1980). Because the departure of two employees in 1972 was not material, the Commissioner abused his discretion by retroactively revoking in 1978 his 1962 ruling, upon which H.T. Boggs relied in 1976 when he rolled over his share in the trust to his IRA. We agree with the conclusion expressed in *Lansons*, 622 F.2d at 778: "[T]he Commissioner's failure to abide strictly by his own regulations limiting retroactive revocation of a favorable ruling amounts to an abuse of discretion."

■■■ Having sustained the Commissioner's retroactive revocation of qualification commencing with fiscal year December 1, 1974, the Tax Court held that consequently the trust was not qualified in 1975 and 1976. We cannot accept this result. In the absence of valid retroactive revocation, the trust remained qualified in 1976. The Commissioner cannot rely on his invalid retroactive revocation to disqualify the trust in 1976. The departure of two employees in 1972 was just as immaterial in 1976 as it had been in 1974.

Accordingly, we conclude that pursuant to I.R.C. § 402(a)(5), H.T. Boggs could roll over his share of the trust without including it in his gross income. The judgment of the Tax Court is vacated, and the case is remanded to the Tax Court for proceedings consistent with this opinion.

K.K. HALL, Circuit Judge, dissenting:

I cannot agree with the majority's decision that the departure of two salaried employees in 1972 did not constitute a material alteration justifying the retroactive revocation of the Boggs Trust. Inherent in the majority holding is a conclusion that unless a change in the employee status actually causes the trust contributions to become discriminatory, the change cannot be material within the meaning of 26 C.F.R. § 601.201(1)(5). In my view this represents an excessively restrictive definition of materiality.

A factor is material if it has the potential to affect the administration of the government agency involved. *United States v. Beer*, 518 F.2d 168, 170 (5th Cir.1975); *United States v. Ivey*, 322 F.2d 523, 529 (4th Cir.1963). In this instance the Boggs Company's plan approved by the IRS in 1962 consisted of two major components: the trust and the union pension plan. When the trust was established, its membership included three members of the prohibited supervisory group and two lower-level employees. Although the Tax Court stated that the level of contributions received by members of the prohibited group was probably discriminatory from the inception of the trust, it is reasonable to believe that the inclusion of a significant percentage of non-prohibited employees effectively camouflaged the true nature of the trust.[1] The departure of all of the nonsupervisory personnel from the trust membership stripped away the mask. By any rational standard this departure must be considered a material change.

I acknowledge that retroactive revocation of qualified trust status and the accompanying loss of favorable tax treatment for all assets distributed from that trust can be strong medicine that must be swallowed by the guilty and innocent alike. Nevertheless, such an action, when taken in response to an employer's failure to comply with the requirements for exemption, comports with both the plain language of the statute and the intent of Congress. Every court of appeals to consider this

---

1. Until 1972 the percentage of non-prohibited employees included in the trust ranged from 33% to 66%. After 1972 the percentage of non-prohibited employees was zero. Since it was the contributions to the trust members that triggered the IRS' action, these figures cannot be ignored by focusing solely on the overall plan.

issue since 1966[2] has come to a similar conclusion. *See Baetens v. Commissioner*, 777 F.2d 1160 (6th Cir.1985); *Benbow v. Commissioner*, 774 F.2d 740 (7th Cir.1985); *Woodson v. Commissioner*, 651 F.2d 1094 (5th Cir.1981). I believe that the position advocated by the Commissioner in this instance is correct in all respects. The taxpayers should be held responsible for the full deficiency assessed against them. I would, therefore, reverse only that portion of the Tax Court's opinion that accords favorable tax treatment to any distributions from the revoked trust.

By its action today, the majority utilizes a strained interpretation of the regulatory language in order to elevate its own equitable concerns over the will of Congress. Such an evasion of clear statutory mandate should not bear the Fourth Circuit's stamp of approval. I must, therefore, respectfully dissent.

---

**2.** The Second Circuit's decision in *Greenwald v. Commissioner*, 366 F.2d 538 (2d Cir.1966), sought to rely on a supposed ambiguity in the statute to justify softening the harsh remedy created by Congress. In the present case, the majority seeks the same goal as the court in *Greenwald* but by a different route.