WILLIAM H. MICHEL AND JOYCE A. MICHEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Michel v. Commissioner
Docket No. 10537-87
United States Tax Court
T.C. Memo 1989-670; 1989 Tax Ct. Memo LEXIS 670; 58 T.C.M. (CCH) 1019; T.C.M. (RIA) 89670; 11 Employee Benefits Cas. (BNA) 2473; December 26, 1989
Henry G. Alexander, for the petitioners. Robin Herrell, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated January 29, 1987, respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1983 in the amount of $ 322. By amended answer, respondent increased petitioners' deficiency to $ 4,918.82, consisting *673 entirely of the section 4973(a) excise tax. [1] After concessions, [2] the issues for decision are: (1) whether a valid individual retirement account was created by William H. Michel's failed attempt to roll over stock distributed to him from several qualified plans; and, if so (2) whether petitioners are liable for the section 4973(a) excise tax on excess contributions to an individual retirement account. FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioners resided at Cincinnati, Ohio, when they filed *674 their petition. In late 1982, Container Corporation of America (CCA) terminated its employment of William H. Michel (hereinafter referred to as petitioner). As a result of his termination, petitioner received the following distributions from corporate pension plans qualified under section 401(a): Mobil Corp.
Cash in Lieu of
Date
Plan
Common Stock
Fractional Share
11/22/82
CCA Stock Bonus Plan
2,980 shares $  24.01
12/16/82
CCA Employee Stock
45 shares 25.34
Ownership Plan
12/82
CCA Employee's
111 shares 230.15
Savings Plan
3/18/83
CCA Employee's
2 shares 3.56
Savings Plan      Total 3,138 shares $ 283.06 On March 28, 1983, petitioner opened account number CE 15192-1-02 with Paine, Webber, Jackson and Curtis, Inc. (the Paine, Webber account). State Street Bank and Trust Company was the custodian of the Paine, Webber account. The Paine, Webber account was maintained by an agreement entitled "State Street Bank and Trust Prototype Individual Retirement Custodial Account" (the account instrument). The account instrument states that it was approved as to form by the Internal *675 Revenue Service on October 28, 1980. The account instrument also states, inter alia, the depositor's desire to establish an individual retirement account (IRA) as described in section 408(a). Article I, section 1.2, of the account instrument further provides that except in the case of a rollover contribution the custodian will only accept contributions in cash from the depositor. On March 28, 1983, petitioner deposited 3,138 shares of Mobil Corporation common stock (the Mobil stock) into the Paine, Webber account. Petitioner intended the contribution to qualify as a tax-free rollover of the Mobil stock received from the CCA retirement plans into an IRA. The 3,138 shares of Mobil stock received by petitioner in 1982 failed to qualify under section 402(a)(5), however, because petitioner's contribution was not within the required 60-day period after petitioner's receipt of the distributions. The 2 shares received by petitioner on March 18, 1983, were contributed within the required 60 days. [3]
*676 Petitioner made no other contributions to his Paine, Webber account during 1983. Nor did he make any withdrawals in 1983. The closing price of the Mobil stock on the New York Stock Exchange on March 28, 1983, was $ 26-1/8 per share. Accordingly, the value of the 3,138 shares of Mobil stock deposited into petitioner's Paine, Webber account on March 28, 1983, was $ 81,980.25. The closing price of the Mobil stock on the New York Stock Exchange at the end of 1983 was $ 28-6/8 per share. In his notice of deficiency, respondent determined that petitioners received dividends of $ 1,369 from the Mobil stock. In his amended answer, respondent increased the deficiency to $ 4,918.82 asserting that petitioner's deposit of the 3,138 shares of Mobil stock into the Paine, Webber account constituted excess contributions to an IRA. OPINION We now address the ramifications of petitioner's failed rollover of the Mobil stock that he received from the various qualified CCA plans. Specifically, we must decide whether petitioner's Paine, Webber account was a valid IRA pursuant to section 408(a). If we hold that it was, we must then decide whether petitioners are liable for the section 4973(a) *677 excise tax on excess contributions to an IRA. We find it useful to first review the statutory framework generally governing the operation of IRAs for the year at issue. Section 408(a) provides for the creation of an IRA, which is generally exempt from Federal income tax pursuant to section 408(e)(1). Next, section 219(a) and the regulations thereunder generally allowed for the year at issue a deduction for contributions made to IRAs, subject to various restrictions and limitations. Furthermore, section 408(d) generally provides that distributions from IRAs are taxable when made. This statutory IRA framework is protected from misuse by the sanction of the section 4973 excise tax on excess contributions. See Orzechowski v. Commissioner, 69 T.C. 750, 755 (1978), affd. 592 F.2d 677 (2d Cir. 1979); H. Rept. 93-1280 (Conf.), 1974-3 C.B. 415, 501. The parties have essentially reversed their positions since respondent's issuance of his notice of deficiency. Respondent now argues that although petitioners' attempted rollover failed, petitioner *678 nevertheless created a valid IRA. Moreover, respondent contends that petitioner's contribution of the Mobil stock constituted an excess contribution for 1983 and is subject to the section 4973(a) excise tax. Petitioners, on the other hand, assert that a valid IRA was never created. Therefore, they argue, petitioner's Paine, Webber account was merely a personal account whose earnings are taxable to petitioner, as respondent originally determined in his notice of deficiency. Generally, petitioners bear the burden of proving that respondent's determination is incorrect. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). However, respondent bears the burden of proof in the instant case because his amended answer increased petitioners' deficiency and sets forth a new theory that is inconsistent with respondent's notice of deficiency. Achiro v. Commissioner, 77 T.C. 881, 890 (1981); Rule 142(a). 1. Whether a Valid IRA was Created
Section 408(a) defines *679 an IRA as a United States trust created for the exclusive benefit of an individual or his beneficiaries and requires the written trust instrument to make certain provisions including, inter alia, that except in the case of a rollover only cash contributions will be accepted. Sec. 408(a)(1). Once the section 408(a) requirements are met, a valid IRA is created, regardless of the subsequent tax treatment of the account. Boggs v. Commissioner, 83 T.C. 132, 153 (1984), vacated on other grounds 784 F.2d 1166 (4th Cir. 1986); Benbow v. Commissioner, 82 T.C. 941, 950 (1984), revd. on other grounds 774 F.2d 740 (7th Cir. 1985); Orzechowski v. Commissioner, supra at 755. Respondent argues that the account instrument governing petitioner's Paine, Webber account fulfills the section 408(a) requirements. Therefore, respondent asserts, petitioner created a valid IRA, notwithstanding the custodian's acceptance of petitioner's noncash contribution, which apparently violated the terms of the written account because the stock contribution did not qualify as a timely rollover. Petitioners, however, contend that *680 there never was a valid IRA. Petitioners argue that the instant case is distinguishable from Boggs v. Commissioner, supra; Benbow v. Commissioner , supra; and Orzechowski v. Commissioner, supra.Specifically, they assert that petitioner's contribution of the Mobil stock, most of which did not qualify as a timely rollover, violated the terms of the IRA and the general cash only requirement of section 408(a)(1). We agree with respondent. Petitioners seek to draw a nexus between the deductibility of an IRA contribution and the validity of the IRA. We have consistently held, however, that no such nexus exists. See Boggs v. Commissioner, supra; Benbow v. Commissioner, supra; Orzechowski v. Commissioner, supra.Petitioners also misread section 408(a) in their attempt to expand the scope of that section. Section 408(a) unequivocally states that the requirements must be met by "the written governing instrument creating the trust." Moreover, it is well-established *681 that a valid IRA is created once the requirements are met by the instrument. In Orzechowski v. Commissioner, supra, the taxpayer was an active participant of a qualified plan for the year at issue. The taxpayer also paid $ 500 into an IRA for that year. Section 219(b)(2), as then in effect, disallowed deduction for IRA contributions by active participants in qualified pension plans. Therefore, we held that the taxpayer was not entitled to deduct his IRA contribution. We also held that the taxpayer had created a valid IRA even though he was not entitled to a deduction for his contribution. Consequently, he was liable for the section 4973(a) excise tax on excess contributions. Petitioners argue that Orzechowski is distinguishable from the instant case because of the following quotation from our opinion: "In this case, the parties assume, and we have no reason to doubt their assumption, that the [taxpayer] met all the requirements of section 408(a) and validly created an IRA in 1975." 69 T.C. at 756. Petitioners infer from this quoted language that we would have reached a different result in Orzechowski if one of the section 408(a) *682 requirements had not been met. Petitioners' inference is irrelevant, however, because we have already found that petitioner's Paine, Webber account and the account instrument met the section 408(a) requirements. Likewise, petitioners fail in their attempt to distinguish the instant case from Benbow v. Commissioner, supra, and Boggs v. Commissioner, supra . In 1978, the taxpayers in Benbow received terminating distributions from a pension plan. They then attempted to roll over the distributions into an IRA. The taxpayers had already contributed into their IRAs for 1978 the maximum amount deductible, exclusive of rollovers. In 1980, the Commissioner retroactively revoked the tax exempt status of the pension plan, effective as of January 1, 1976. We held that only the portions of the distributions resulting from contributions made before the retroactive loss of tax exempt status qualified for exclusion from income under section 402(a)(5) as rollovers into IRAs. The remaining amounts did not qualify. Because the taxpayers had already contributed the maximum amount deductible, we held that the amounts that did not qualify as rollovers *683 constituted excess contributions. Petitioners contend that the instant case is distinguishable because in Benbow all of the section 408(a) requirements were met. However, this contention is inconsistent with petitioners' position that petitioner's noncash contribution violated section 408(a)(1) because they fail to explain why the contribution in excess of the maximum amount provided for in Benbow did not violate section 408(a)(1) whereas in the instant case, petitioner's noncash contribution did. Boggs v. Commissioner, supra, also involved a situation similar to that in Benbow v. Commissioner, supra. In 1976, the taxpayer rolled over a terminating distribution from a profit-sharing trust into an IRA. In 1978, the qualified status of the trust was retroactively revoked. As in Benbow, we held that part of the terminating distribution qualified for rollover status under section 402(a)(5) and part did not. We further held that although the taxpayer's IRA did accept some excess contributions in violation of the trust agreement, the IRA was still valid and exempt from tax. Petitioners maintain that Boggs is distinguishable *684 because it would have been difficult for us to have invalidated the IRA in that case because a substantial portion of the IRA contribution did qualify as a rollover. Moreover, petitioners argue that the facts in Boggs did not "trigger much sympathy" for the taxpayer. We are not persuaded by petitioners' arguments. It is well settled that the subsequent tax treatment of an IRA contribution does not affect the validity of an IRA. Furthermore, whether a particular taxpayer's facts are sympathetic is irrelevant to this inquiry. 2. Section 4973 Excise Tax
Having decided that petitioner created a valid IRA in 1983, we next address whether petitioners are liable for the section 4973(a) excise tax on excess IRA contributions. That section imposes a yearly excise tax of 6 percent of the amount of excess contributions to IRAs. Section 4973(b), in relevant part, defines excess contributions as the excess of the amount contributed in a taxable year to the IRA, exclusive of rollover contributions, *685 over the amount allowable as a deduction under section 219. The excise tax is limited to 6 percent of the value of the IRA as of the end of the taxable year. Sec. 4973(a). Petitioners do not dispute that the provisions of section 4973(a), on its face, apply to them. Instead, petitioners argue that the imposition of the section 4973(a) excise tax would create an unduly harsh situation for them. Petitioners further assert that the imposition of the excise tax in their situation is not warranted because the concerns that Congress had in enacting the excise tax are not present. Respondent counters that despite its harshness, the excise tax is required to be imposed under the statutory scheme devise by Congress to govern the operation of IRAs. We agree with respondent. Petitioners fail in their attempt to distinguish their case from Boggs v. Commissioner, supra; Benbow v. Commissioner, supra; and Orzechowski v. Commissioner, supra. Yet, in effect, they ask us to reexamine our analysis in those cases, which we decline to do. As we stated earlier in response to criticism *686 regarding the harshness of the section 4973(a) excise tax: Congress exercised its legislative judgment in deciding what sanctions were best calculated to achieve its legislative purpose, and no one has suggested that it exceeded its constitutional powers in the decision that it made. Even if we were convinced that a different scheme of sanctions would be fairer or more appropriate, it is not for us to substitute our judgment for that of the Congress. * * * [Orzechowski v. Commissioner, supra at 757. Emphasis added.] Petitioners place great significance on the enactment of section 408(d)(5)(B) in the Revenue Act of 1978, which essentially allows for correction of an excess rollover contribution where the taxpayer reasonably relies on erroneous information. Petitioners argue that with the enactment of that section Congress intended to eliminate "tax disasters," such as their situation. We also reject this argument. The legislative history of that section does not suggest such a broad proposition. To the contrary, *687 section 408(d)(5)(B) is limited to the specific situation where the taxpayer reasonably relies on the erroneous information and the excess contribution is distributed. Petitioners clearly do not fall within the provisions of section 408(d)(5)(B). Petitioners also analogize their case to Larotonda v. Commissioner, 89 T.C. 287 (1987), and suggest that we "step back and question the scope of a particular provision added to the Code by Congress" as we did in Larotonda. We dismiss this argument. Given the clear meaning of section 4973(a) and the well-settled law involving that section, our analysis of the legislative intent behind section 72(m)(5) in Larotonda is not applicable in this case. We do note that the 2 shares of Mobil stock that were received by petitioner on March 18, 1983, and contributed by him into his IRA on March 28, 1983, qualify for rollover treatment under section 402(a)(5). Therefore, the excess contribution should be reduced accordingly. Sec. 4973(b)(1)(A). Finally, we note that the closing price of Mobil stock on the date of the excess contribution, *688 March 28, 1983, was lower than the closing price on December 31, 1983. Therefore, the excise tax is to be computed on the March 28, 1983, value of $ 26-1/8 per share. Sec. 4973(a). In light of the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Respondent concedes that his adjustment increasing taxable income by $ 58 for interest from the Northern Trust Company was improper because petitioners had already included the income on their 1983 return. Therefore, this adjustment is not reflected in the increased deficiency asserted by respondent in his amended answer.↩
3. This finding contradicts the parties' stipulation, which states that petitioner's entire contribution of 3,138 shares failed to qualify for rollover treatment. Accordingly, we disregard that portion of the parties' stipulation which is contradictory.↩